# Exhibit 1

P. Mot. for Summ. J./D. Resp. to Rogs Set 1

Court: S.D. Ill.  Case No. 3:21cv540-NJR

Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento CA 95814 – 916.419.7111

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| SCOTT WYNN, an individual,<br><br>     *Plaintiff*,<br><br>v.<br><br>THOMAS J. VILSACK, in his official capacity as Secretary of Agriculture, *et al.*,<br><br>     *Defendants*. | No. 3:21–cv–00514–MMH–JRK |

**DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES (as supplemented October 8, 2021)**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendants Thomas J. Vilsack, *et al.*, by and through their undersigned counsel, hereby respond to Plaintiff's First Set of Interrogatories:

Defendants' objections and responses are based on information known to Defendants at this time, and are made without prejudice to additional objections should Defendants subsequently identify additional grounds for objection. The information submitted herewith is being provided in accordance with the Federal Rules of Civil Procedure, which generally permit the discovery of matters not privileged that are relevant to the claims or defenses in this civil action, and that is proportional to the reasonable needs of the case. Fed. R. Civ. P. 26(b)(1). Accordingly, Defendants do not, by providing such information, waive any objection to its admissibility on the grounds of relevance, proportionality, accessibility, materiality, or any other appropriate ground. Defendants reserve the right to amend these responses until the close of discovery in this case.

1

## <u>DEFENDANTS' OBJECTIONS TO PLAINTIFF'S INSTRUCTIONS AND DEFINITIONS</u>

1.　　Defendants object to Instruction 1 insofar as it seeks information from Defendants' "attorneys" that may be protected by the attorney-client privilege, the attorney work product doctrine, the deliberative process privilege, or any other applicable legal protection from disclosure.

2.　　Defendants object to Definition 2 to the extent "identify" includes providing a government employee's "present or last known address." Any employees identified in response to Plaintiff's interrogatories may be contacted through Defense counsel. When identifying a person in response to any interrogatory, Defendants will state the person's name and title.

3.　　Defendants object to Definition 4 because requiring Defendants to "identify all oral communications which were made at the act or event identified" and "all documents concerning the act or event identified" is unduly burdensome. Defendants will identify oral communications and documents to the extent necessary to comply with their obligations under the Federal Rules to provide information responsive and relevant to Plaintiff's interrogatories.

## <u>RESPONSES</u>

<u>Interrogatory No. 1:</u>　Identify all persons who contributed to or consulted in the preparation of answers to these Interrogatories and indicate each Interrogatory for which they contributed or were consulted.

<u>Response:</u>　　Defendants object to this interrogatory because the terms "contributed to or consulted" are ambiguous.  Defendants will construe this interrogatory as asking for the identification only of persons who provided substantive information used in these responses, and not persons such as counsel who provided advice concerning these responses.  Defendants further object to the extent this interrogatory calls for information protected by the attorney-client privilege, deliberative process privilege, and/or other governmental privileges.

Without waiver of the foregoing objection, Defendants respond as follows: Dana Richey, Assistant to the Deputy Administrator, Farm Loan Programs, was consulted in responding to Interrogatory Nos. 8, 9, 13, and 17.  Sheila Oellrich, Assistant to the Director, Loan Servicing and Property Management Division, was also consulted in responding to Interrogatory No. 13. William Cobb, Deputy Administrator, Farm Loan Programs was consulted in responding to Interrogatory Nos. 4, 8, and 9.

Toni Williams, Agricultural Program Manager, Farm Storage Facility Loan Program, Sugar Storage Facility Loan Program, and Sugar Loan Program; Laura Schlote, Branch Chief, Contracts and Applications, Program Delivery Division; and Cloretta Lewis, Financial Specialist, Price Support Division were also consulted in responding to Interrogatory No. 17.

Zach Ducheneaux, Administrator, Farm Service Agency, was consulted in responding to all interrogatories contained herein.

All of the above individuals were consulted in responding to Interrogatory 2.


Interrogatory No. 2:   Identify all documents referred to or examined in the preparation of the answers to these Interrogatories and indicate each Interrogatory for which each document was referred to or examined.

Response:      Defendants object to this interrogatory as overly burdensome insofar as it calls for identification of documents "referred to or examined" in preparation of these interrogatory responses that did not contain information responsive to the interrogatories and were not relied upon in their preparation.

Without waiver of the foregoing objection, Defendants respond as follows: For Interrogatory No. 13, Defendants pulled loan information from the USDA IT system Program Loan Accounting System (PLAS) and then cross-referenced that information with spreadsheets

of class-members in the *Pigford* cases and the *Keepseagle* case to determine relevant class members.

For Interrogatory No. 17, Defendants obtained loan information from the Program Loan Accounting System (PLAS) and Guaranteed Loan System (GLS). Defendants also relied on spreadsheets derived from data obtained from the Financial Management Division, from the Enterprise Data Warehouse, and from Business Partner.

For Interrogatories No. 8 and 15, Defendants relied upon the *Notice of Funds Availability; American Rescue Plan Act of 2021 Section 1005 Loan Payment (ARPA)*, 86 Fed. Reg. 28,329 (May 26, 2021).

Interrogatory No. 3:   Identify every person you intend to have offer testimony in this case and describe the substance of the anticipated testimony.

Response:   Defendants object to this interrogatory as prematurely seeking information the disclosure of which is governed by Local Rule 3.06 and, by doing so, seeks litigation strategy protected by the attorney work product doctrine.  Defendants will identify every person they intend to have offer testimony in this case in their pretrial disclosures, if such disclosures are necessary, as provided by Federal Rule of Civil Procedure 26(a)(3) and Local Rule 3.06.

Interrogatory No. 4:   Identify every government interest that you contend is advanced by the "socially disadvantaged" provisions of Section 1005.

Response:   Defendants object to this interrogatory as prematurely seeking information the disclosure of which is governed by the Case Management and Scheduling Order, ECF No. 43, and, by doing so, seeks litigation strategy protected by the attorney work product doctrine. Defendants will address the issues raised in this interrogatory, as appropriate, in their summary judgment briefing.

Without waiver of the foregoing objections, Defendants respond as follows: Section 1005 furthers the government's interests in remedying the lingering effects of the well-documented history of discrimination against minority farmers in USDA farm loan programs and in preventing public funds from being allocated in a way that perpetuates the effects of discrimination.

Interrogatory No. 5:   For each government interest identified in your response to Interrogatory No. 4, explain how the "socially disadvantaged" provisions of Section 1005 is tailored to further that interest.

Response:      Defendants object to this interrogatory as a blockbuster "contention interrogatory" to which no response is required.  *See, e.g.*, *Felix v. City & Cty. of Denver*, No. 08-02228, 2009 WL 3838587, at *1 (D. Colo. Nov. 13, 2009); *Grynberg v. Total, S.A.*, No. 03-01280, 2006 WL 1186836, at *6 (D. Colo. May 3, 1996); *Everett v. USAir Gp.*, 165 F.R.D. 1, 3 (D.D.C. 1995) ("Insofar as these interrogatories call for defendants to separately articulate the underlying facts upon which they base their defenses, however, they are contention interrogatories and defendants need not respond at this time.").  Defendants will address the issues raised in this interrogatory, as appropriate, in their summary judgment briefing.

Without waiver of the foregoing objections, Defendants respond as follows: Defendants refer Plaintiff to Defendants' Response in Opposition to Plaintiff's Motion for Preliminary Injunction, ECF No. 22, at 17-39 & accompanying exhibits. Pursuant to Federal Rule of Civil Procedure 33(d), Defendants further identify the sources cited therein. Defendants also refer Plaintiff to the Congressional record to the extent Plaintiff seeks information related to Congress's intent in passing Section 1005.

Supplemental Response:      Defendants have produced the documents cited above at the following Bates numbers: ARPA_WYNN_00001019—ARPA_WYNN_00001134,

ARPA_WYNN_00001150—ARPA_WYNN_00002304, ARPA_WYNN_00002310—

ARPA_WYNN_00002489, ARPA_WYNN_00002571—ARPA_WYNN_00002685,

ARPA_WYNN_00003153—ARPA_WYNN_00003215, ARPA_WYNN_00003400—

ARPA_WYNN_00003406, ARPA_WYNN_00003420—ARPA_WYNN_00003452,

ARPA_WYNN_00003464—ARPA_WYNN_00003666, ARPA_WYNN_00003675—

ARPA_WYNN_00004348.


Interrogatory No. 6:    Identify all factual evidence and supporting documentation (including, but not limited to, legislative evidence, scientific studies, investigations, interviews, or testimony) that support the assertion that the interests identified in your response to Interrogatory No. 4 are advanced by Section 1005.

Response:    Defendants object to this interrogatory as a blockbuster "contention interrogatory"

to which no response is required. *See, e.g.*, *Felix v. City & Cty. of Denver*, No. 08-02228, 2009

WL 3838587, at *1 (D. Colo. Nov. 13, 2009); *Grynberg v. Total, S.A.*, No. 03-01280, 2006 WL

1186836, at *6 (D. Colo. May 3, 1996); *Everett v. USAir Gp.*, 165 F.R.D. 1, 3 (D.D.C. 1995)

("Insofar as these interrogatories call for defendants to separately articulate the underlying facts

upon which they base their defenses, however, they are contention interrogatories and defendants

need not respond at this time."). Defendants will address the issues raised in this interrogatory,

as appropriate, in their summary judgment briefing.

Without waiver of the foregoing objections, Defendants respond as follows: Defendants

refer Plaintiff to Defendants' Response in Opposition to Plaintiff's Motion for Preliminary

Injunction, ECF No. 22, at 17-39 & accompanying exhibits. Pursuant to Federal Rule of Civil

Procedure 33(d), Defendants further identify the sources cited therein.

Supplemental Response:    Defendants have produced the documents cited above at the

following Bates numbers: ARPA_WYNN_00001019—ARPA_WYNN_00001134,

ARPA_WYNN_00001150—ARPA_WYNN_00002304, ARPA_WYNN_00002310—

ARPA_WYNN_00002489, ARPA_WYNN_00002571—ARPA_WYNN_00002685,

ARPA_WYNN_00003153—ARPA_WYNN_00003215, ARPA_WYNN_00003400—

ARPA_WYNN_00003406, ARPA_WYNN_00003420—ARPA_WYNN_00003452,

ARPA_WYNN_00003464—ARPA_WYNN_00003666, ARPA_WYNN_00003675—

ARPA_WYNN_00004348.


<u>Interrogatory No. 7:</u>   Identify all race-neutral means you have considered or used to further the government interests you identified in your response to Interrogatory No. 4.

<u>Response:</u>       Defendants object to this interrogatory as a blockbuster "contention interrogatory" to which no response is required. *See, e.g.*, *Felix v. City & Cty. of Denver*, No. 08-02228, 2009 WL 3838587, at *1 (D. Colo. Nov. 13, 2009); *Grynberg v. Total, S.A.*, No. 03-01280, 2006 WL 1186836, at *6 (D. Colo. May 3, 1996); *Everett v. USAir Gp.*, 165 F.R.D. 1, 3 (D.D.C. 1995). Defendants will address the issues raised in this interrogatory, as appropriate, in their summary judgment briefing.

<u>Supplemental Objections and Response</u>:       Defendants also object to the terms "used" and "considered" as vague and ambiguous. Defendants will construe the term "used" to mean "actually implemented" by Congress or USDA and will construe the term "considered" to mean "reviewed and analyzed by Congress or USDA."

Defendants further object to this request as overly burdensome and disproportionate to the needs of the case to the extent it seeks information about race-neutral means "considered" but not actually implemented at any point in time prior to Defendants' consideration of the remedial measure adopted in Section 1005.  Defendants will construe this request as seeking information

about race-neutral means considered by Congress or USDA since January 3, 2021, as an alternative to Section 1005.

Moreover, Defendants object to this request as overly burdensome and disproportionate to the needs of the case because it seeks identification of all race-neutral means ever "used" by Defendants without time limitation. Defendants will construe this interrogatory as seeking information about race-neutral means used by Congress or USDA since 1990 to further the government's identified compelling interests.

Defendants additionally object to this request to the extent it is seeking information protected by the deliberative process privilege—including by application of the consultant corollary, *see Am. Oversight v. United States Dep't of the Treasury*, 474 F. Supp. 3d 251, 262 (D.D.C. 2020)—the legislative privilege, *see United States v. Brewster*, 408 U.S. 501, 525 (1972), or any other applicable legal protection or privilege.

Without waiver of the foregoing objections, Defendants respond as follows: Defendants refer Plaintiff to the Defendants' Response in Opposition to Plaintiff's Motion for Preliminary Injunction, ECF No. 22, at 2-13, 18-19, 31-38 & accompanying exhibits. Pursuant to Federal Rule of Civil Procedure 33(d), Defendants further identify the sources cited therein. Defendants have produced the documents cited above at the following Bates numbers: ARPA_WYNN_00003165—ARPA_WYNN_00003215, ARPA_WYNN_00003433— ARPA_WYNN_00003435, ARPA_WYNN_00003675—ARPA_WYNN_00004348.

For ease of reference, Defendants also provide herein other means used or considered to further the government's compelling interests, which were discussed in the relevant portions of the briefing or are identified by Defendants pursuant to this supplemental response:

- Congress created a program to provide outreach and technical assistance to socially disadvantaged farmers in 1990 (the "2501 Program"). Consolidated Farm and Rural

Development Act of 1961 ("CONACT"), as amended (7 U.S.C. § 1922, et seq.). In 2014, Congress expanded the 2501 program to include veterans, Agricultural Act of 2014, Sec. 12201 (7 U.S.C. § 2279), and permanently funded the 2501 Program in 2018, Agriculture Improvement Act of 2018, Sec. 12301 (7 U.S.C. § 2279).

- In 1994, Congress reorganized USDA to separate the farm loan programs mission area from the rural development and conservation mission areas, Federal Crop Insurance Reform and Department of Agriculture Reorganization Act of 1994 (7 U.S.C. § 6901, *et seq.*), and other internal agency reorganizations have altered the role of county committees in loan making decisions, *see* Defendants' Response in Opposition to Plaintiff's Motion for Preliminary Injunction, ECF No. 22, at 2-3; Congressional Research Service (CRS), FSA Comms.: In Brief (Jan. 29, 2021) (FSA Comms.), available at https://perma.cc/HA3L-PDPG.

- USDA established administrative claims processes pursuant to settlement agreements entered in lawsuits brought by certain groups of minority farmers, *see, e.g. Pigford v. Glickman*, 1:97-cv-1978-PLF, ECF No. 167; and, in 2010, Congress allocated additional funds for settlements reached through those lawsuits, Claims Resolution Act of 2010, Pub L. 111-291, 124 STAT. 3064.

- In 1998, Congress enacted legislation to waive the Equal Credit Opportunity Act statute of limitation for all individuals who previously filed discrimination complaints with USDA. Section 741 of the Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 1999, enacted in Division A, section 101(a) of the Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. 105–277 (codified in 7 U.S.C. § 2279 notes); see also 7 C.F.R §15f.

- In 2002, Congress created an office at the Assistant Secretary level within USDA dedicated to enforcing civil rights. *See* https://www.usda.gov/oascr.

- In 2008, Congress mandated the creation of an Advisory Committee on Minority Farmers and required the Department to report civil rights complaints, resolutions, and personnel actions. Food, Conservation, and Energy Act of 2008, §§ 14008, 14010.

- In 2010, Congress enacted a provision in the Dodd-Frank Wall Street Reform and Consumer Protection Act that extended the statute of limitations for claims brought under the Equal Credit Opportunity Act, including claims against USDA/FSA, from 2 years to 5 years. 15 U.S.C. § 1691e(f) (2010), *amended by* Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010).

- In 2014, Congress established the Socially Disadvantaged Farmer and Rancher Policy Research Center, required the compilation and public disclosure of data to assess participation of socially disadvantaged farmers and ranchers in programs of the Department, and authorized a permanent microloan program. Agricultural Act of 2014, §12202 (7 U.S.C. § 2279(c)(5); 7 U.S.C. § 2279-1; 7 U.S.C. § 1943(c))

- In 2018, Congress mandated the creation of a Tribal Advisory Committee and provided provisions ensuring eligibility for operators on heirs property land to obtain a farm number.  Agriculture Improvement Act of 2018, §§ 12303, 12615 (7 U.S.C. § 6622b *et seq.*; 7 U.S.C. § 6921 et seq.)

- Congress has also held numerous oversight hearings focused on civil rights issues at USDA, including in FSA and its loan programs. *See, e.g.,* Hr'g on USDA's Civil Rights Progs. and Responsibilities before The House Subcomm. on Dep't Ops., Oversight, Nutrition, and Forestry, Comm. on Ag., 106th Cong. 37 (1999) (Goodlatte) (recognizing that "[c]ivil rights at the [USDA] has long been a problem"); 2002 Civil Rights Hr'g 16, 18, 26 (hearing testimony about the disparities in loan processing times and approval rates for Hispanic farmers; underrepresentation of minorities in USDA; and continuing delays in the resolution of civil rights complaints); Hr'g to Review the USDA's Farm Loan Progs. before the Senate Comm. on Ag., Nutrition, and Forestry, 109th Cong. 800 (2006) (Karen Krub, Farmers' Legal Action Group, Inc.) ("[T]here is still no meaningful process for investigation and resolution of allegations of discrimination [against] FSA decision-makers."); Hr'g to Review Availability of Credit in Rural America before the House Subcomm. on Conserv., Credit, Energy, and Research, Comm. on Ag., 110th Cong. 8 (2007); Hr'g on Mgmt. of Civil Rights at the USDA before the House Subcomm. on Gov't Mgmt., Org., and Procurement, Comm. on Oversight and Gov't Reform, 110th Cong. 137 (2008) (hearing testimony about, and recognizing, the continued problem of USDA discrimination against minority farmers, including the inability of Native American and Hispanic farmers to receive loans; underrepresentation of minorities on county committees; and delayed processing of civil rights complaints, including allegations that complaints were shredded and not processed, all despite creation in 2002 of the Assistant Secretary of Civil Rights); House Ag. Comm. Hr'g on U.S. Ag. Policy and the 2012 Farm Bill (Apr. 21, 2010); House Ag. Comm. Hr'g on USDA Oversight 45, 50 (July 22, 2015).In 2018 and 2019, the Farm Service Agency was authorized to distribute up to $25.1 billion through the Market Facilitation Program (MFP) to assist producers directly affected by retaliatory tariffs by China. *See* https://perma.cc/67CF-L387.

- FSA and its predecessor entity have had various structures and processes in place to provide oversight of farm loan programs, including audit systems for reviewing county offices' general compliance with rules and regulations for making direct loans and for providing loan servicing and civil rights compliance processes to monitory county offices' policies and practices.

- USDA has commissioned entities to conduct investigations and draft reports to attempt to address discrimination in USDA's farm loan programs, including but not limited to the Civil Rights Action Team in 1996-1997 and Jackson Lewis LLP, and has conducted internal reviews of its programs through audits and Inspector General investigations. Congress has also requested reports concerning access to credit, discrimination and civil

rights compliance, and other issues related to USDA's farm loan programs from entities such as the Government Accountability Office.

Interrogatory No. 8:   Please describe the process for determining whether a group is "socially disadvantaged" for purposes of Section 1005, including how Defendants determined that each group identified in the *Notice of Funds Availability; American Rescue Plan Act of 2021 Section 1005 Loan Payment (ARPA)*, 86 Fed. Reg. 28,329 (May 26, 2021) (namely, "American Indians or Alaskan Natives; Asians; Blacks or African Americans; Native Hawaiians or other Pacific Islanders; and Hispanics or Latinos") is "socially disadvantaged."

Response:       Defendants object to this interrogatory as compound insofar as it seeks

information concerning both the (pre-NOFA) process of pre-designation of socially

disadvantaged groups and the current (post-NOFA) process for determining whether a group

qualifies as socially disadvantaged for purposes of Section 1005, which are distinct topics not

fairly encompassed by one interrogatory.  Defendants will count this interrogatory as two against

Plaintiff's limit.

A)       Defendants object to the portions of this interrogatory concerning the pre-NOFA

designation process to the extent it is seeking information protected by the deliberative process

privilege—including by application of the consultant corollary, *see Am. Oversight v. United

States Dep't of the Treasury*, 474 F. Supp. 3d 251, 262 (D.D.C. 2020)—or any other applicable

legal protection or privilege.

Supplemental Objections and Response:       To the extent this interrogatory seeks

information regarding Congress's non-public gathering of information or advice for the purpose

of enacting legislation, such information would be protected from disclosure under the legislative

privilege.  *See United States v. Brewster*, 408 U.S. 501, 525 (1972).

Without waiver of the foregoing objections, Defendants respond as follows:  For

purposes of Section 1005, a socially disadvantaged group is "a group whose members have been

subjected to racial or ethnic prejudice because of their identity as members of a group without

regard to their individual qualities." 7 U.S.C. § 2279(a)(6); *see* ARPA § 1005(b)(3).  In

determining which groups to include in the definition of "socially disadvantaged" provided by

the NOFA, Defendants relied on the definition provided by 7 U.S.C. § 2279(a) and the race and

ethnic categories USDA uses in administering the 2501 Program.  *See* Pub. L. 115-334, Title

XII, §§ 12301(b), 12306(a), Dec. 20, 2018, 132 Stat. 4951, 4968.


   B)   As to the current (post-NOFA) process, the Secretary of Agriculture "will

determine on a case-by-case basis whether additional groups qualify under this definition in

response to a written request with supporting explanation."  *See* the *Notice of Funds Availability;*

*American Rescue Plan Act of 2021 Section 1005 Loan Payment (ARPA)*, 86 Fed. Reg. 28,329,

28,330 (May 26, 2021).


Interrogatory No. 9:   Please identify all other groups that Defendants have considered for
inclusion as "socially disadvantaged" for purposes of Section 1005 and explain whether the
group was determined to be "socially disadvantaged" and why or why not.

Response:      Defendants object to the portions of this interrogatory concerning the pre-

designation process as seeking information protected by the deliberative process privilege—

including by application of the consultant corollary, *see Am. Oversight v. United States Dep't of*

*the Treasury*, 474 F. Supp. 3d 251, 262 (D.D.C. 2020)—or any other applicable legal protection

or privilege.

   Without waiver of the foregoing objections, Defendants respond as follows:  Defendants

have not yet considered groups not enumerated in the NOFA.

<u>Interrogatory No. 10:</u>  Please identify and provide a complete list of the reasons that women were not included as a "socially disadvantaged" group for purposes of Section 1005 and 7 U.S.C. 2279.

<u>Response:</u>      Defendants object to this interrogatory to the extent it seeks information protected by the deliberative process privilege—including by application of the consultant corollary, *see Am. Oversight v. United States Dep't of the Treasury*, 474 F. Supp. 3d 251, 262 (D.D.C. 2020)—or any other applicable legal protection or privilege.  Defendants further object to the extent that the interrogatory seeks information not within Defendants' knowledge or control.

Without waiver of the foregoing objections, Defendants respond as follows:  Women farmers and ranchers are eligible for Section 1005 relief so long as they are members of a socially disadvantaged group.  For purposes of Section 1005, a socially disadvantaged group is "a group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities."  7 U.S.C. § 2279(a)(6); *see* ARPA § 1005(b)(3).  Defendants refer Plaintiff to Pub. L. 115-334, Title XII, §§ 12301(b), 12306(a), Dec. 20, 2018, 132 Stat. 4951, 4968, and its associated legislative history for evidence of Congress's reasons for using that statutory language.

<u>Interrogatory No. 11:</u>  If you contend that race (including both race and ethnicity) is not the sole criterion for determining whether a farmer or rancher is "socially disadvantaged" within the meaning of Section 1005, please state the complete basis for your contention.

<u>Response:</u>      Under Section 1005, the sole criterion for whether a farmer or rancher is socially disadvantaged is whether the farmer or rancher is "a member of a socially disadvantaged group," which is defined as "a group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities."  7 U.S.C. § 2279(a)(5), (6); *see also* ARPA § 1005(b)(3).

13

<u>Interrogatory No. 12:</u>  Please identify all instances in the past 25 years in which USDA or FSA engaged in or facilitated discrimination on the basis of race (including both race and ethnicity).

<u>Response:</u>        Defendants object to this interrogatory on the ground that the phrase "engaged in or facilitated discrimination" as ambiguous.  Defendants also object to this interrogatory as overly broad and disproportionately burdensome to the extent it seeks identification of all instances of race discrimination occurring in any and all USDA programs regardless of their relationship to FSA farm loan programs. Defendants further object to this interrogatory as overly broad and disproportionately burdensome because it is not premised on the relevant legal standard—that the Government have "a strong basis in evidence for its conclusion that [the challenged] action was necessary" to further its compelling interests.  *Ensley Branch, NAACP v. Seibels*, 31 F.3d 1548, 1565 (11th Cir. 1994).

Without waiver of the foregoing objections, Defendants respond as follows:  Defendants refer Plaintiff to Defendants' Response in Opposition to Plaintiff's Motion for Preliminary Injunction, ECF No. 22, at 3-13 & accompanying exhibits.  Pursuant to Federal Rule of Civil Procedure 33(d), Defendants further identify the sources cited therein.

<u>Supplemental Response:</u>        Defendants have produced the documents cited above at the following Bates numbers: ARPA_WYNN_00000001—ARPA_WYNN_00001114, ARPA_WYNN_00001135—ARPA_WYNN_00002309, ARPA_WYNN_00002490—ARPA_WYNN_00003432, ARPA_WYNN_00003453—ARPA_WYNN_00004399.


<u>Interrogatory No. 13:</u>  Please identify the number of farmers who both (1) are eligible for debt relief under Section 1005; and (2) received payments pursuant to *Pigford*, *Pigford II*, and *Keepseagle* (cited in ¶¶ 35–37 of Plaintiff's Complaint), together with total dollar amount of payments received by those farmers.

<u>Response:</u>        Defendants object to this interrogatory on the ground that "payments" is ambiguous.  Defendants will interpret the term to mean the debt relief and any other payments

specified in the settlement agreements for each action that were awarded to prevailing claimants.

*See Pigford v. Glickman*, 1:97-cv-1978-PLF, ECF No. 167; *In re Black Farmers Discrimination Litigation*, 1:08-mc-511-PFL, ECF No. 170-2; *Keepseagle v. Vilsack*, No. 99-CV-03119, ECF No. 621-2.

Without waiver of the foregoing objection, Defendants respond as follows:  Of borrowers who are eligible for debt relief under Section 1005, three-hundred seventy of them have received payments under *Pigford, Pigford II*, or *Keepseagle*, which payments total $30,712,100.27.


Interrogatory No. 14:  Please provide a listing (including, as appropriate, a spreadsheet or database) of all farmers who had outstanding loan balances on qualifying farm loans as of January 1, 2021, including the following information: name [or alternative unique identifier], location, original loan amount, loan date, outstanding loan amount as of January 1, age, race, and ethnicity.

Response:     Defendants object to this interrogatory to the extent that it seeks information the disclosure of which would violate 5 U.S.C § 552a and 7 U.S.C. § 8791.   Defendants are available to meet and confer regarding appropriate measures, such as a protective order, to prevent unlawful disclosure of information.


Interrogatory No. 15:  Please state the complete basis for your contention that "Plaintiff has failed to exhaust administrative remedies." ECF No. 48 at 13.

Response:     Defendants object to this interrogatory as a blockbuster "contention interrogatory" to which no response is required.  *See, e.g.*, *Felix v. City & Cty. of Denver*, No. 08-02228, 2009 WL 3838587, at *1 (D. Colo. Nov. 13, 2009); *Grynberg v. Total, S.A.*, No. 03-01280, 2006 WL 1186836, at *6 (D. Colo. May 3, 1996); *Everett v. USAir Gp.*, 165 F.R.D. 1, 3 (D.D.C. 1995) ("Insofar as these interrogatories call for defendants to separately articulate the underlying facts

upon which they base their defenses, however, they are contention interrogatories and defendants

need not respond at this time.").

Without waiver of the foregoing objections, Defendants respond as follows:  Pursuant to

the NOFA, "[t]he Secretary of Agriculture will determine on a case-by-case basis whether

additional groups qualify under th[e] definition [of a socially disadvantaged group] in response

to a written request for supporting explanation." *Id.* at 28,330.  Judicial review is not available

under the Administrative Procedure Act unless "an aggrieved party has exhausted all

administrative remedies expressly prescribed by statute or agency rule." *Darby v. Cisneros*, 509

U.S. 137, 146 (1993).  Upon information and belief, Plaintiff has not submitted a written request

to the Secretary.

Interrogatory No. 16:  Please state the complete basis for your contention that "Plaintiff is not
entitled to attorney's fees or costs." ECF No. 48 at 13.

Response:      Defendants object to this interrogatory as a blockbuster "contention interrogatory"

to which no response is required.  *See, e.g.*, *Felix v. City & Cty. of Denver*, No. 08-02228, 2009

WL 3838587, at *1 (D. Colo. Nov. 13, 2009); *Grynberg v. Total, S.A.*, No. 03-01280, 2006 WL

1186836, at *6 (D. Colo. May 3, 1996); *Everett v. USAir Gp.*, 165 F.R.D. 1, 3 (D.D.C. 1995).

Defendants will address the issues raised in this interrogatory, if and when necessary, in the

context of any briefing on fees.

Interrogatory No. 17:  Please provide the total dollar amount of outstanding farm loans as of January 1, 2021 for farmers that do not qualify as "socially disadvantaged" for purposes of Section 1005.

Response:      Defendants object to this interrogatory on the ground that "outstanding farm loan" is ambiguous.  Defendants will interpret the term to mean a loan falling within the definition of "farm loan" under Section 1005(b).

Without waiver of the foregoing objection, Defendants respond as follows: Based on currently available data, as of January 1, 2021, the total dollar amount of outstanding farm loan balances for borrowers who, as of July 14, 2021, were identified as White/Non-Hispanic is approximately $30,226,629,606.42.  This dollar amount includes outstanding balances as of January 1, 2021 for loans eligible for debt relief under ARPA Section 1005 that are held by those who identify as White/Non-Hispanic.  It includes $29,297,474,937 in outstanding Direct and Guaranteed loans administered or guaranteed by the Farm Service Agency and $929,154,669.42 in outstanding Farm Storage Facilities Loans administered by the Commodity Credit Corporation.

Interrogatory No. 18:  If you contend that COVID-19 relief for farmers was not administered in a racially neutral fashion, please state the basis for your contention.

Response:      Defendants object to this interrogatory as a blockbuster "contention interrogatory" to which no response is required.  *See, e.g.*, *Felix v. City & Cty. of Denver*, No. 08-02228, 2009 WL 3838587, at *1 (D. Colo. Nov. 13, 2009); *Grynberg v. Total, S.A.*, No. 03-01280, 2006 WL 1186836, at *6 (D. Colo. May 3, 1996); *Everett v. USAir Gp.*, 165 F.R.D. 1, 3 (D.D.C. 1995) ("Insofar as these interrogatories call for defendants to separately articulate the underlying facts upon which they base their defenses, however, they are contention interrogatories and defendants need not respond at this time.").

Without waiver of the foregoing objections, Defendants respond as follows:  Defendants refer Plaintiffs to Defendants' Response in Opposition to Plaintiff's Motion for Preliminary Injunction, ECF No. 22, at 9-11 & accompanying exhibits.  Pursuant to Federal Rule of Civil Procedure 33(d), Defendants further identify the sources cited therein.

Supplemental Response:    Defendants have produced the documents cited above at the following Bates numbers: ARPA_WYNN_00000001—ARPA_WYNN_00001018, ARPA_WYNN_00001150—ARPA_WYNN_00002304, ARPA_WYNN_00002490—ARPA_WYNN_00002570, ARPA_WYNN_00002856—ARPA_WYNN_00002931, ARPA_WYNN_00003153—ARPA_WYNN_00003215, ARPA_WYNN_00003400—ARPA_WYNN_00003406, ARPA_WYNN_00003415—ARPA_WYNN_00003419, ARPA_WYNN_00003667—ARPA_WYNN_00003670, ARPA_WYNN_00004349—ARPA_WYNN_00004399.

For ease of reference, Defendants also provide herein the information discussed in the relevant portions of the briefing:  Reporting before Congress in the lead-up to Section 1005's enactment showed that the overwhelming majority of funds distributed through the Coronavirus Food Assistance Program in 2020 went to non-minority farmers.  J. Hayes, *USDA Data: Nearly All Pandemic Bailout Funds Went to White Farmers*, Envir'l Working Group (EWG) (Feb. 18, 2021), https://perma.cc/PVZ7-QMFD.  In hearings leading to Section 1005's enactment, Senator Stabenow explained that "[t]he diminished relationships between [SDFRs] and USDA as a result of both latent barriers and historic discrimination limit[ed]" SDFRs' access to, and participation in, USDA programs, such that "73 percent of Black farmers … were not even aware of the agricultural aid provisions of the[se] coronavirus rescue programs."  167 Cong. Rec. S1264 (March 5, 2021) (Senator Stabenow) (citing Fed'n of S. Coops/Land Assist. Fund, Ann. Rep. 4

(2020), https://perma.cc/94PY-HSM6).  And a letter introduced into the record from 13 full-time

professors who specialize in agricultural issues explained that federal farm programs "have

perpetuated and exacerbated the problem" of discrimination, by preferring certain crops (those

produced by white farmers) and "reward[ing] the largest farms the most" (those owned by white

farmers), thereby "distort[ing] credit, land, input costs, and markets" to the disadvantage of

minority farmers.  *Id.* S1266 (summarizing Hr'g on the Decline of Minority Farming in the

United States, Comm. on Gov't Ops., U.S. House of Reps. (1990); D.J. Miller Disparity Study:

Producer Participation and EEO Compl. Process Study), D.J. Miller & Associates report

prepared for the USDA FSA (1996); USDA: Problems in Processing Discrim. Compls., GAO

(2002); USDA: Recomms. and Options to Address Mgmt. Deficiencies in the Off. of the

Assistant Secretary for Civil Rights, GAO (2008), https://perma.cc/YW73-83WE.  *See* S1266-

67).


As to the interrogatories, see Attachment for verification.

As to the objections, see below for signatories:

Dated: October 8, 2021          Respectfully submitted,

                                  BRIAN M. BOYNTON
                                  Acting Assistant Attorney General

                                  LESLEY FARBY
                                  Assistant Branch Director
                                  Civil Division, Federal Programs Branch

                                  */s/ Kyla Snow*
                                  EMILY SUE NEWTON (VA Bar No. 80745)
                                  Senior Trial Counsel
                                  KYLA M. SNOW (Ohio Bar No. 96662)
                                  MICHAEL F. KNAPP (Cal. Bar No. 314104)
                                  Trial Attorneys

United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-3259 / Fax: (202) 616-8460
Kyla.snow@usdoj.gov

*Counsel for Defendants*

# ATTACHMENT

I declare under penalty of perjury that the responses to the above interrogatories are true and correct to the best of my knowledge.

ZACHARY
DUCHENEAUX

Digitally signed by ZACHARY
DUCHENEAUX
Date: 2021.10.08 17:43:17 -04'00'

Zach Ducheneaux
Administrator
Farm Service Agency

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Defendants' Objections and Responses to Plaintiff's First Set of Interrogatories (as supplemented October 8, 2021) was served on counsel for Plaintiff via email on October 8, 2021.

/s/ *Kyla M. Snow*
KYLA M. SNOW