IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MATTHEW MORTON and JOSHUA MORTON,<br>　　　*Plaintiffs*,<br><br>　　　v.<br><br>THOMAS J. VILSACK, in his official capacity as Secretary of Agriculture; ZACH DUCHENEAUX, in his official capacity as Administrator, Farm Service Agency,<br>　　　*Defendants*. | Case No. 3:21-cv-00540-NJR |

### THE NATIONAL BLACK FARMERS ASSOCIATION'S AND THE ASSOCIATION OF AMERICAN INDIAN FARMERS' MOTION TO INTERVENE AS DEFENDANTS

The National Black Farmers Association ("NBFA") and the Association of American Indian Farmers ("AAIF") move to intervene in this case. They wish to defend § 1005 of the American Rescue Plan Act of 2021, and its goal to remedy systemic, institutional racism that has denied "socially disadvantaged farmers and ranchers"—whom the government-Defendants also refer to as "minority farmers"—access to government loan programs. The parties have met and conferred. The government-Defendants and Plaintiffs stated they oppose this motion, without providing any basis or reason.

Section 1005 authorizes the U.S. Department of Agriculture ("USDA") to "provide a payment in an amount up to 120 percent of the outstanding indebtedness of each socially disadvantaged farmer or rancher" with qualifying loans. Plaintiffs contend § 1005 is unconstitutional because it "distributes benefits and burdens on the basis of race" and they seek to stop USDA from implementing the law. *E.g.*, Am. Compl., Dkt. No. 29, ¶¶ 1, 55–63.

NBFA and AAIF previously moved to conditionally intervene as defendants. Dkt. No. 31. In so doing, they followed the direction of the Seventh Circuit, which instructs would-be

1

intervenors wishing to join the side of the government to wait until a clear divergence of interests emerges before seeking to formally intervene, as the government is presumed to adequately represent the public. *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Engs.*, 101 F.3d 503, 509 (7th Cir. 1996).

That divergence has now occurred, and NBFA and AAIF should be allowed to enter the case as Intervenor-Defendants. All current parties state that "should the Court conclude that § 1005 violates Plaintiffs' equal protection rights," the Court can (and the government-Defendants argue should) remedy that violation through the "extension of the benefits to those excluded under the challenged provision." Defs.' MSJ Br., Dkt. No. 51, at 37; *see also* Pls.' MSJ Br., Dkt. No. 47, at 25 (explaining the Court can provide relief by "open[ing] Section 1005 benefits to all farmers and ranchers regardless of race").

NBFA and AAIF contend that is incorrect. Rewriting § 1005 to forgive the liability of anyone who has outstanding, qualifying loans is not a means to remedy racial discrimination (the law's purpose). In fact, the government-Defendants' evidence establishes their solution would perpetuate and enhance racial inequities. Section 1005 is not simply a payoff for past bias. It is meant to level a tilted playing field. Reimagining § 1005 so it forgives loans irrespective of the fact that USDA only discriminated against certain groups is inconsistent with Congress's goal, and consequently unlawful.

Thus, NBFA and AAIF have the right to enter the case as parties under Federal Rule of Civil Procedure 24(a)(2) to protect the interests of the socially disadvantaged farmers and ranchers they represent. In the alternative, the Court should exercise its discretion to allow NBFA and AAIF to enter as parties under Rule 24(b).

I.       **NBFA and AAIF can intervene as a matter of right.**

Rule 24(a)(2) provides: "On timely motion, the court must permit anyone to intervene who … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Under this rule, a movant is "*entitled* to intervene" where it satisfies four elements: (1) the application is timely; (2) the applicant has an interest relating to issues in the litigation; (3) that interest may, as a practical matter, be impaired or impeded by disposition of the case; and (4) the applicant's interest is not adequately represented by the parties in the lawsuit. *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 746 (7th Cir. 2020) (emphasis in original). Where an intervenor and the government will be on the same side, courts also add a rebuttable presumption the government will adequately represent the interests. *Solid Waste*, 101 F.3d at 508.

Recognizing the rebuttal presumption makes early intervention on the side of the government difficult, but that "the government's representation … may turn inadequate," the Seventh Circuit instructs such a potential intervenor "to file at the outset of the case a standby or conditional application for leave to intervene and ask the district court to defer consideration of the question of adequacy of representation until the applicant is prepared to demonstrate inadequacy." *Id.* at 508–09. The purpose of this conditional motion is to remove any allegation of "foot-dragging," as it establishes the potential intervenor's interest in the action in a timely manner. *Id*. at 509. If necessary, the proposed intervenor can later establish its interests have diverged from the government's—thus the government can no longer adequately represent the intervenor's interests—rebutting the presumption and substantiating the intervenor's right to enter. *Id.*

NBFA and AAIF followed this direction and filed a conditional motion, which established each of the elements of their right to intervene under Rule 24(a)(2), except that the government would not adequately represent their interests. The motion was timely, filed just weeks after the Court denied the government-Defendants' motion to stay all proceedings, and before any dispositive motions had been filed or discovery had commenced. Br. ISO Conditional MTI 6–7 (citing *Protestant Mem'l Med. Ctr., Inc. v. Maram*, No. 05-CV-03-DRH, 2005 WL 8173760, at *2 (S.D. Ill. Apr. 7, 2005); *Shapo v. Engle*, No. 98 C 7909, 2000 WL 198435, at *5 (N.D. Ill. Feb. 11, 2000)). NBFA's and AAIF's conditional motion also established they have an interest in the litigation, attaching declarations that they are membership organizations working to secure the financial solvency of Black and Native American farmers and ranchers, including through obtaining loan forgiveness like that provided under § 1005; and that their members have loans that would be forgiven under § 1005 as written. *Id.* at 3–4 (citing attached declarations in support); *id.* at 7 (citing *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 572 (7th Cir. 2009)). Accordingly, NBFA and AAIF also demonstrated that the disposition of the suit could impair or impede their interests. *Id.* at 8 (citing *Solid Waste*, 101 F.3d at 507). In addition, NBFA and AAIF explained that their declarations established associational Article III standing, *id.* at 5–6 (citing *Flying J, Inc.*, 578 F.3d at 573, *inter alia*), which allows them to "pursue relief" distinct from the parties, *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1648 (2017).[1]

Lest there be any doubt that NBFA's and AAIF's conditional motion made out all but the final requirement for Rule 24(a)(2) intervention, USDA already conceded in another case challenging the constitutionality of § 1005 that the Federation of Southern Cooperatives, whose

---

[1] As required by Rule 24(c), with their conditional motion, NBFA and AAIF provided a proposed Answer to the Amended Complaint, which, pursuant to Local Rule 15.1, was submitted to chambers via email.

4

members also included qualifying socially disadvantaged farmers and ranchers, has a "stake in the outcome" of the litigation. Gov. Opp. Int. 1, *Miller v. Vilsack*, No. 4:21-cv-595-O, 2021 WL 5984715 (N.D. Tex. Nov. 12, 2021). USDA argued only that intervention under Rule 24(a)(2) was inappropriate because the Federation failed to establish at that time that USDA would not adequately represent the Federation's interests. *Id.* 7–13. Nonetheless, USDA recognized the Federation's interest was so significant it could not object to discretionary intervention under Rule 24(b), *id.* at 1, 13–15, even though the motion was filed sixth months into litigation—and four months after NBFA and AAIF had filed their own conditional motion to intervene, *id.* 2–5. The court denied the Federation's intervention, explaining the proper course was for it to proceed as NBFA and AAIF did, both there and here, by filing a conditional motion to intervene that would not be acted upon until "developments in this lawsuit indicate that the organizations' interests diverge from [USDA]'s." *Miller v. Vilsack*, No. 4:21-CV-0595-O, 2021 WL 6129207, at *3 (N.D. Tex. Dec. 8, 2021), *appeal docketed*, No. 21-11271 (5th Cir. Dec. 22, 2021). In sum, NBFA and AAIF did everything to entitle them to intervene at the point their interests diverge from the government-Defendants here, as USDA and another court considering an essentially identically situated party have already recognized.

The government-Defendants' summary judgment filings now provide that final element entitling NBFA and AAIF to intervene under Rule 24(a)(2). Those papers establish that the government-Defendants do not and cannot represent NFBA's and AAIF's interests because NBFA and AAIF disagree on the appropriate remedy if § 1005 is held unconstitutional. Divergence on remedy is a standard reason why an existing party cannot represent the proposed intervenor's interests, even given the rebuttable presumption the government will provide adequate representation. *E.g.*, *AAP v. FDA*, No. PWG-18-883, 2019 WL 5964548, at *4 (D. Md. Oct. 2,

5

2019) (holding trade association entitled to intervene as of right on the side of the government to challenge remedy), *aff'd sub nom. In re Cigar Ass'n of Am.*, 812 F. App'x 128 (4th Cir. 2020); *see also Int'l Franchise Ass'n, Inc. v. City of Seattle*, No. C14-848 RAJ, 2014 WL 12515261, at *3 (W.D. Wash. Sept. 15, 2014) (stating later disagreement with government-defendant on remedy would justify intervention as a matter of right).

Further, the extent of the divergence here is deep, underscoring the need for intervention: NBFA and AAIF believe the record already disproves the Court could rewrite § 1005 to be facially neutral, as the government-Defendants recommend. Both Defendants and Plaintiffs concede that whether the Court should strike down or expand an unconstitutional law turns on what "'Congress likely would have chosen'" had it known its race-conscious law would be unenforceable. Defs.' MSJ Br. 37 (quoting *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1701 (2017)); Pls.' MSJ Br. 25 (same). Section 1005's legislative history details that Congress enacted the law to remedy racial bias. The law was drafted to address USDA's "undeniable … dark history of past discrimination against minority farmers." *Wynn v. Vilsack*, 545 F. Supp. 3d 1271, 1279 (M.D. Fla. 2021); *see also, e.g.*, 167 Cong. Rec. S1,264–65 (daily ed. Mar. 5, 2021) (statement of Sen. Debbie Stabenow) ("Congress includes [Section 1005] to address the longstanding and widespread systemic discrimination within the USDA, particularly within the loan programs, against socially disadvantaged farmers and ranchers."); *id.* at S1,265–66 (statement of Sen. Cory Booker) (explaining § 1005 seeks to prevent a "wave of foreclosures" against minority farmers); Sec'y of Agric. Thomas J. Vilsack before H. Comm. on Agric. (Mar. 25, 2021) ("[Section 1005] respond[s] to the cumulative impacts of systemic discrimination and barriers to access that have created a

cycle of debt.")[2]. This history undermines any suggestion Congress would have chosen to pass a race neutral law. One does not remedy racial bias by denying the imbalance it created.

In fact, the government-Defendants demonstrate their proposed remedy would reinforce racial inequities. Their brief explains, Defs.' MSJ Br. 38, the House found the discrimination motivating § 1005 resulted in socially disadvantaged farmers and ranchers receiving a smaller "share of the farm loans and payments administered by USDA." H.R. Rep. No. 117-7, at 12 (2021). This was true not just in absolute numbers, but in the "proportiona[l]" share of "agricultural credit." 167 Cong. Rec. S1,265. Accordingly, the government-Defendants lay out that if the Court were to eliminate § 1005's application to socially disadvantaged farmers and ranchers, and expand it to all similarly situated borrowers, that would transform § 1005 from a $4 billion initiative into a $40 billion one. Defs.' MSJ Br. 39. Put another way, non-socially disadvantaged farmers *already received ten times more funds* from USDA through the loan programs at issue. Because of this biased history, "non-minority 'farms are between 129% and 336% larger than Asian farms,' on average, and 'between 103% and 347% larger than Black farms.'" *Id.* at 14 (citing Robb Rpt. at 64). Therefore, rewriting § 1005 to forgive all qualifying loans would effectively double the discriminatory harm caused by the USDA that Congress sought to remedy. USDA has already hindered the economic development of socially disadvantaged farmers and ranchers. If USDA were now allowed to reimburse all qualifying loans, it would further diminish the relative market power of socially disadvantaged farmers and ranchers, as once again a disproportionate share of funds would flow to their peers, who have already benefited from the agency's willingness to look beyond the color of their skin or background.

---

[2] Available at https://www.usda.gov/media/press-releases/2021/03/25/opening-statement-thomas-j-vilsack-house-committee-agriculture.

Moreover, as the government-Defendants' expert explained, USDA's discrimination leaves socially disadvantaged farmers and ranchers more financially vulnerable than their peers. USDA's discrimination has taken the form of "[d]elayed" or "reduced" loans and a "lack of technical assistance." Defs.' MSJ Br. 10 (citing Robb Rpt. at 2–5, 16–38, 84–85; USCCR, *Equal Opp'y in Farm Programs* 79 (1965)). As a result, socially disadvantaged farmers and ranchers were unable to purchase supplies and seedlings, or make timely payments on debt incurred for those items. *Id.*; *see also id.* at 11 (citing Robb Rpt. at 24–26); *In re Black Farmers Discrimination Litig.,* 856 F. Supp. 2d 1, 8 (D.D.C. 2011) (USDA's discrimination "deprived countless farmers of desperately needed credit and payments under various aid programs, with the result that many farmers suffered severe financial losses."). The effect is that socially disadvantaged farmers and ranchers currently produce less per acre than their peers. Accordingly, they have not been able to save or grow their farms to the same extent—and the latter increases their injury because USDA programs "reward the largest farms the most." *Id.* at 14–15. Thus, "minority farmers are facing much higher rates of default and [are] disproportionally on the brink of foreclosure relative to non-minority farmers." *Id.* at 17. In arguing that § 1005 should be extended if it is found unconstitutional, Defendants overlook these facts demonstrating discrimination has compounding effects well beyond the outstanding loan balance. Redressing such misconduct requires the agency to generate equity, not merely create the appearance of present-day equality, as Congress recognized.

Defendants may argue that some relief is better than none, particularly because two recent facially race-neutral USDA programs—the Market Facilitation Program and Coronavirus Food Assistance Program—overwhelmingly funded "non-minority farmers." Defs. MSJ Br. 16. While it is true USDA did not evenly distribute those funds, this should serve as a warning that USDA's

8

ingrained discriminatory culture cannot be trusted to administer a race-neutral law in a neutral fashion. This recent conduct is certainly not a recommendation for giving the agency freer rein. What is more, as the government-Defendants recognize, the inequitable distribution of pandemic relief created unique "urgen[cy]" among socially disadvantaged farmers and ranchers for funds. *Id.* Especially when combined with the other ways USDA's discrimination has hampered socially disadvantaged farmers' and ranchers' growth, if the government were to forgive all qualifying loans, that would further empower those with less need to take advantage of their position. The Court would be enabling, and the government would be facilitating, farmers and ranchers who have been able to build wealth thanks to easier access to USDA credit to buy out minority farmers or otherwise increase their competitive advantages. They would be blessing the loss of more socially disadvantaged owned farms and ranches, the precise outcome § 1005 was passed to avoid. For all these reasons, the government-Defendants' proposed remedy has no relation to § 1005's goals of addressing systemic racism.

NBFA and AAIF have the right to present this argument as parties. They filed their conditional motion to intervene in a timely manner and filed these papers to activate that motion just two weeks after the divergence of interests appeared. NBFA and AAIF represent socially disadvantaged farmers and ranchers who Congress meant to benefit from § 1005. Defendants, in advocating that the Court convert a statute designed to correct racial discrimination into one that denies and enhances that reality, can no longer represent NBFA's and AAIF's interests. Without party status, the Court could grant the government-Defendants' requested remedy, produce the precise harm that NBFA and AAIF fear, and no party would have standing to appeal that decision. Both the Government and Plaintiffs would have received their requested remedy. *E.g.*, Am. Compl. 19 (Plaintiffs' prayer for relief requesting as their lead form of injunctive relief that the Court

"open[] eligibility for loan assistance to all farmers or ranchers with qualifying loans"). NBFA and AAIF should be allowed to intervene under Rule 24(a)(2).

**II.  In the alternative, the Court should grant permissive intervention.**

Were the Court to deny intervention under Rule 24(a)(2), it should exercise its discretion to allow NFBA and AAIF to intervene under Rule 24(b). That rule allows intervention of a party who makes a timely motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). District courts have broad discretion on this issue and may permit intervention when the movant's claim or defense has a question of law or fact in common with the existing action, and intervention will not delay or prejudice the adjudication of the rights of the original parties. *Trump v. Wis. Elections Comm'n*, No. 20-cv-1785-bhl, 2020 WL 7230960, at *2–3 (E.D. Wis. Dec. 8, 2020).

As explained above, NBFA's and AAIF's motion is timely twice over, with them having timely filed their conditional motion for intervention and timely activated that motion. Their objection to the remedy proposed by both Plaintiffs and Defendants is unquestionably in common with the main action. Moreover, because NBFA's and AAIF's divergence in interests with the government-Defendants focuses on the proposed remedy, their participation will not delay or prejudice the original parties in any way. They do not seek discovery, or to address the merits at this stage. So long as Plaintiffs and Defendants will not suggest NBFA or AAIF have waived any argument by failing to make a filing, they are willing to rely on the arguments made by the parties, in their amicus brief, and in these intervention papers. To the extent the parties or Court prefers another filing, NBFA and AAIF are willing to make a submission of such a length and on such a timeline as requested. Thus, should the Court deny intervention under Rule 24(a)(2), it should grant permissive intervention under Rule 24(b).

## CONCLUSION

For the foregoing reasons, the NBFA and AAIF respectfully request the Court allow them to intervene.

Date: March 15, 2022

Respectfully submitted,

**PUBLIC JUSTICE, P.C.**

*/s/ David S. Muraskin*
David Muraskin* (D.C. Bar No. 1012451)
Jessica Culpepper* (D.C. Bar No. 988976)
   *Lead Counsel*
1620 L Street NW, Suite 630
Washington, D.C. 20036
Telephone: (202) 797-8600
Facsimile: (202) 232-7203
dmuraskin@publicjustice.net
jculpepper@publicjustice.net

*Counsel for the National Black Farmers Association and the Association of American Indian Farmers*

* Admitted *Pro Hac Vice*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed via the court's CM/ECF system on March 15, 2022, which will serve all counsel of record.

*/s/ David S. Muraskin*
David S. Muraskin
