**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MATTHEW MORTON and JOSHUA MORTON, individuals, | Case No. 3:21-cv-00540-NJR |
| Plaintiffs, | |
| v. | |
| THOMAS J. VILSACK, in his official capacity as Secretary of Agriculture; ZACH DUCHENEAUX, in his official capacity as Administrator, Farm Service Agency, | |
| Defendants. | |

## PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE

In accordance with this Court's order (ECF No. 61), Plaintiffs Matthew and Joshua Morton submit this response to the National Black Farmers Association and Association of American Indian Farmers' ("Proposed Intervenors") motion to intervene alongside Defendants. The motion should be denied. Proposed Intervenors have not overcome the substantial presumption that Defendants—government officials who have mounted a vigorous defense of the statute that Proposed Intervenors support—adequately represent their interests. Proposed Intervenors claim that Defendants' representation is inadequate because they disagree with the government's view as to which remedy the Court should adopt if Plaintiffs prevail on the merits. But that only highlights the untimeliness of Proposed Intervenors' motion, since they have known the government's position on remedy for many months. Proposed Intervenors have also not proposed a different remedy, and their failure to engage with the single issue they claim requires granting them party status dooms their motion to intervene.

In any event, the existing parties have already presented the Court with both alternatives if Section 1005 is held unconstitutional: either enjoin it entirely (Plaintiffs' position) or expand it to all farmers (the government's position). There is no need to add Proposed Intervenors as parties when the existing parties have covered both possible remedies. The Court should deny intervention as of right and permissive intervention.

## BACKGROUND

This is a challenge to the constitutionality of Section 1005 of the American Rescue Plan Act of 2021. The statute directs the Secretary of the Interior to pay off 120% of the outstanding balance of all qualifying farm loans held by "socially disadvantaged farmers and ranchers" as of January 1, 2021. As the government acknowledges, the term "socially disadvantaged" refers only to a farmer's race or ethnicity. Farmers with qualifying loans are eligible for debt repayment so long as they are not white and non-Hispanic. No consideration is given to a farmer's economic need, the size of his farm, or the impact the COVID-19 pandemic had on the farm's operations.

Plaintiffs Matthew and Joshua Morton are Illinois farmers who hold otherwise qualifying farm loans. They are excluded from Section 1005's debt relief solely because of their race. The Mortons sued Agriculture Secretary Tom Vilsack and Administrator of the Farm Services Administration Zach Ducheneaux under the equal protection component of the Due Process Clause and the Administrative Procedure Act, seeking a court order enjoining Defendants from enforcing Section 1005's race-based provisions. *See generally* First Am. Compl., ECF No. 29.

After filing a conditional intervention motion in December (ECF No. 31), Proposed Intervenors now seek to intervene as defendants on the ground that Defendants no longer adequately represent their interests (ECF No. 56).

## ARGUMENT

### I.      Proposed Intervenors Are Not Entitled to Intervene as of Right

A non-party may intervene in a pending case as a matter of right if it satisfies the four requirements of Federal Rule of Civil Procedure 24(a)(2): "(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action." *Illinois v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019). Plaintiffs do not dispute that Proposed Intervenors meet the second and third elements. Nor do Plaintiffs dispute that their motion for conditional intervention was timely. But their current motion for actual intervention—filed near the end of summary judgment briefing and many months after the government first asserted its position on remedy—is untimely. More importantly, Proposed Intervenors have not overcome the strong presumption that Defendants adequately represent their interest in defending Section 1005.

### A.      The Request to Intervene Is Untimely

"The test for timeliness is essentially one of reasonableness: 'potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act promptly.'" *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995) (quoting *Nissei Sangyo Am., Ltd. v. United States*, 31 F.3d 435, 438 (7th Cir. 1994)). To assess timeliness, the Seventh Circuit has pointed to four factors: "(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; [and] (4) any other unusual circumstances." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 797–98 (7th Cir. 2013) (quoting *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000)).

Here, the first factor weighs heavily in favor of untimeliness because Proposed Intervenors have long known the government's position on remedy in the event Section 1005 is held unconstitutional. Contrary to their claim that a "divergence of interests appeared" in recent weeks (ECF No. 56 at 9), the government's position was clear at least by June 2021. That is when Defendants asserted in *Wynn v. Vilsack*—a case in which Proposed Intervenors filed both an amicus brief and a conditional intervention motion[1]—that Section 1005 should be expanded to include white farmers if it were found to violate the Equal Protection Clause.[2] It is no surprise that the government has maintained that position in this case (*see* ECF No. 51 at 37–40), yet Proposed Intervenors waited at least eight months, until summary judgment briefing was nearly complete, to assert that the government's view on remedy makes its representation inadequate. That delay is unreasonable. *See Sec. & Exch. Comm'n v. Wealth Mgmt., LLC*, No. 9-C-506, 2019 WL 2912725, at *3 (E.D. Wis. July 8, 2019) ("In this circuit, a time frame of eight months, and sometimes even shorter, has been deemed untimely.") (citing cases).

---

[1] *See* NBFA Amicus Br., *Wynn v. Vilsack*, No. 3:21-cv-514 (M.D. Fla. June 10, 2021), ECF No. 25; NBFA Mot. to Intervene, *Wynn* (June 15, 2021), ECF No. 34.

[2] At the *Wynn* preliminary injunction hearing, Defendants' counsel stated that because "Congress wants these funds to go out to minority farmers," "the better remedy here would be an inclusive one" where white farmers would "be included in the group who gets [debt relief], as opposed to an exclusive remedy cutting off the funds to minority farmers." Tr. of Prelim. Inj. Hr'g at 74–75, *Wynn* (June 16, 2021), ECF No. 37. Regardless of whether Proposed Intervenors attended the hearing or reviewed the transcript, they were certainly aware of the court's response to Defendants' argument. *See Wynn v. Vilsack*, 545 F. Supp. 3d 1271, 1289 (M.D. Fla. 2021) ("[T]he Government argued that the Court can award Plaintiff the same debt relief being provided to [socially disadvantaged farmers] at the end of this case."); *id.* at 1292 (addressing Defendants' argument that the court could "rewrit[e] Section 1005 to create a debt relief program that would include a White farmer and order[ ] the Government to provide Plaintiff debt relief from it"). The government also made the same argument last year in *Miller v. Vilsack*, of which Proposed Intervenors were also aware. *See* Order at 19, *Miller v. Vilsack*, Case No. 4:21-cv-0595 (N.D. Tex. July 1, 2021), ECF No. 60 ("The Government contends that, if Plaintiffs succeed on the merits of their claim, the Court could order debt relief from the program funds [for white farmers] . . . .").

The third timeliness factor also weighs against Proposed Intervenors because, as discussed below, they will suffer no prejudice from being denied party status, since their argument can be made just as effectively through the amicus brief already on file (ECF No. 53). Under the circumstances here, Proposed Intervenors' motion should be denied as untimely.

### B.   Proposed Intervenors Have Not Overcome the Presumption of Adequate Representation

Even if the motion were timely, it should be denied. Non-parties seeking to intervene on the side of the government in defending legislation have a particularly difficult time showing inadequacy of representation. First, there is a general presumption that where "the prospective intervenor and the named party have 'the same goal,'" in the litigation, "there is a rebuttable presumption of adequate representation that requires a showing of 'some conflict' to warrant intervention." *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 799 (7th Cir. 2019) (quoting *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 659 (7th Cir. 2013)). That presumption applies here because Proposed Intervenors and Defendants share the same ultimate objective—defending Section 1005. *See Walker*, 705 F.3d at 659 ("[T]he Employees and the state share the same goal: protecting Act 10 against the Unions' constitutional challenge."); *United States v. S. Bend Cmty. Sch. Corp.*, 692 F.2d 623, 628 (7th Cir. 1982) ("Since the NAACP and the Government had the same ultimate objective," namely, school desegregation, "we presume that the Government adequately represents the NAACP.").

Second, the "presumption of adequacy becomes even stronger when the representative party 'is a governmental body charged by law with protecting the interests of the proposed intervenors'; in such a situation the representative party is presumed to be an adequate representative 'unless there is a showing of gross negligence or bad faith.'" *Planned Parenthood*, 942 F.3d at 799 (quoting *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007)). Put

differently, a governmental defendant "is presumed to represent the interests of its citizens" when it acts in its sovereign capacity. *United States v. New York*, 820 F.2d 554, 558 (2d Cir. 1987). This heightened presumption applies here because Defendants are federal government officials who are vigorously defending Section 1005 from constitutional challenge. Proposed Intervenors do not argue otherwise.

Yet Proposed Intervenors make no attempt to overcome this heightened presumption. They do not assert that Defendants have acted in bad faith or have been negligent in performing their duty to defend Section 1005. Nor do they claim that there has been "collusion" between Defendants and Plaintiffs. *See Wade v. Goldschmidt*, 673 F.2d 182, 186 n.7 (7th Cir. 1982). Instead, their claim of inadequate representation is based on the assertion that they "disagree" with the government "on the appropriate remedy if § 1005 is held unconstitutional." ECF No. 56 at 5. Such disagreement does not rise to the level of gross negligence or bad faith on the part of Defendants and is insufficient to overcome the strong presumption of adequate representation.

Moreover, nowhere in their brief do Proposed Intervenors offer a coherent view on what the remedy *should* be if Plaintiffs prevail on the merits. That glaring omission undermines Proposed Intervenors' assertion that a difference of opinion on remedy justifies their intervention. As the parties have noted, there are only two possible remedies: (1) invalidate Section 1005's racial classification, thus expanding its benefits to all farmers, or (2) invalidate the entire statute. Proposed Intervenors oppose the former remedy, arguing that it would "reinforce racial inequities." *Id.* at 7. But they do not argue that this Court should instead adopt the remedy Plaintiffs favor[3] and invalidate the entire statute. Indeed, it is not clear what Proposed Intervenors would

---

[3] Proposed Intervenors wrongly claim that Plaintiffs support the first option. (ECF No. 56 at 9.) To the contrary, as Plaintiffs' summary judgment briefing makes clear, they believe that the proper

have the Court do if it finds the statute unconstitutional. They stridently argue that Congress would not have passed a race-neutral debt relief statute, but that ignores the question of what to do about the current statute that is *not* race-neutral. Their failure to engage on the very issue that they claim merits intervention is enough to doom Proposed Intervenors' motion.

Further, Proposed Intervenors appear to misunderstand Defendants' position. They argue that unless they are allowed to intervene, "the Court could grant the government-Defendants' requested remedy, produce the precise harm that NBFA and AAIF fear, and no party would have standing to appeal that decision." *Id.* at 9. But Defendants have not "requested" that Section 1005 be expanded to every farmer regardless of race. On the contrary, the government's position is that Section 1005 is constitutional as written—but that, in the event the Court disagrees, it should expand Section 1005 to all farmers and ranchers rather than invalidate it entirely. Thus, should the Court rule for Plaintiffs on the merits, Defendants will have standing to appeal *the entire judgment*—even if the Court accepted the government's position as to the appropriate remedy.[4] Proposed Intervenors' suggestion that the parties would have nothing to complain about on appeal is simply wrong.

In the end, Proposed Intervenors cannot overcome the strong presumption of adequacy simply by expressing disagreement with the government's view as to the proper remedy and offering no alternative. The Court should deny their motion to intervene as of right.

---

remedy is to invalidate Section 1005 and prohibit Defendants from making any payments under it. (*See* ECF No. 47 at 31–32.)

[4] Plaintiffs would likely also have standing to appeal on the question of remedy. *See EEOC v. Chicago Club*, 86 F.3d 1423, 1431 (7th Cir. 1996) (stating that a prevailing party has standing to appeal "if the judgment is 'adverse to him in some respect'") (quoting *First Nat'l Bank of Chi. v. Comptroller of the Currency*, 956 F.2d 1360, 1363 (7th Cir. 1992)).

## II.     Proposed Intervenors Should Not Be Granted Permissive Intervention

In circumstances where intervention as of right is inappropriate, the Court still retains discretion to permit anyone who "has a claim or defense that shares with the main action a common question of law or fact" to intervene. Fed. R. Civ. P. 24(b)(1); *see Planned Parenthood*, 942 F.3d at 803. In exercising its discretion, the Court may consider the Rule 24(a) elements—including adequacy of representation. *See Planned Parenthood*, 942 F.3d at 803. Indeed, some courts have observed that where "intervention as of right is [denied] based on the government's adequate representation, the case for permissive intervention diminishes or disappears entirely." *Tutein v. Daley*, 43 F. Supp. 2d 113, 131 (D. Mass. 1999) (citations omitted). That is true here.

There are two other reasons to deny permissive intervention. First, Proposed Intervenors themselves admit that it is unnecessary. They note that they are willing to rest on the arguments made in their amicus brief—which Plaintiffs did not oppose—and in their brief in support of intervention. (*See* ECF No. 56 at 10.) Second, as noted above, together the existing parties are already advocating for both potential remedies—either expansion or invalidation of Section 1005's benefits. Thus, should the Court find Section 1005 unconstitutional, Proposed Intervenors' views on the proper remedy cannot go unrepresented, and their participation as *amici* is sufficient to inform the Court as to their disagreement with the government's position that the Court should remedy any constitutional defect in Section 1005 by expanding the program to all farmers and ranchers with eligible loans. *See, e.g.*, *Feehan v. Wis. Elections Comm'n*, No. 20-CV-1771-PP, 2020 WL 7249866, at *7 (E.D. Wis. Dec. 9, 2020) (holding that because the movant had filed an amicus brief, "[t]he court has the benefit of the movant's perspective; he does not need to become a party to ensure that the court takes into account th[at] perspective . . . ."). There is no reason to award Proposed Intervenors party status.

8

## CONCLUSION

Plaintiffs respectfully ask the Court to deny Proposed Intervenors' motion to intervene.

DATED: April 5, 2022.

Respectfully submitted,

PACIFIC LEGAL FOUNDATION

s/ Glenn E. Roper
Glenn E. Roper,                                 Wencong Fa,
Colo. Bar No. 38723                             Cal. Bar No. 301679*
Lead Counsel                                    Christopher M. Kieser,
1745 Shea Center Dr., Suite 400                 Cal. Bar No. 298486*
Highlands Ranch, CO 80129                       555 Capitol Mall, Suite 1290
Telephone: (916) 419-7111                       Sacramento, CA 95814
Facsimile: (916) 419-7747                       Email: WFa@pacificlegal.org
Email: GERoper@pacificlegal.org                 Email: CKieser@pacificlegal.org
Service: IncomingLit@pacificlegal.org

*Attorneys for Plaintiffs*
*\* Pro Hac Vice*

9

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2022, I submitted the foregoing to the Clerk of the Court via the District Court's CM/ECF system, which will provide notice of the submission of this document to all counsel of record.

s/ Glenn E. Roper
Glenn E. Roper

*Attorney for Plaintiffs*
