## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

Matthew MORTON, *et al.*,

                Plaintiffs,

     v.

Thomas J. VILSACK, in his official capacity as Secretary of Agriculture, *et al.*

                Defendants.

Case No. 3:21-cv-00540-NJR

## DEFENDANTS' BRIEF IN OPPOSITION TO THE NATIONAL BLACK FARMERS ASSOCIATION'S AND THE ASSOCIATION OF AMERICAN INDIAN FARMERS' MOTION TO INTERVENE AS DEFENDANTS

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES......................................................................................... ii

INTRODUCTION ......................................................................................................... 1

BACKGROUND ........................................................................................................... 1

ARGUMENT ................................................................................................................. 3

I.      **Movants have not shown that they are entitled to intervene as of right.** ......................... 3

      A.      Movants' only cognizable interest in this litigation is preservation of § 1005 relief for its members. ....................................................................................... 4

      B.      Movants' asserted interest in preserving their lobbying success is not "legally protectable" under Rule 24. .................................................................................. 5

      C.      The government adequately represents Movants' sole protectable interest in this litigation........................................................................................................... 7

II.     **The Court should deny permissive intervention.** ........................................................ 12

CONCLUSION .............................................................................................................. 14

## TABLE OF AUTHORITIES

**Cases**

*Am. Acad. of Pediatrics v. FDA,*
    PWG-18-883, 2019 WL 5964548 (D. Md. Oct. 2, 2019) ..................................................10

*Arakaki v. Cayetano,*
    324 F.3d 1078 (9th Cir. 2003).........................................................................................10

*Califano v. Westcott,*
    443 U.S. 76 (1979) ...........................................................................................................10

*Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Old Sec. Life Ins. Co.,*
    600 F.2d 671 (7th Cir. 1979) .............................................................................................8

*Entergy Gulf States La., LLC v. EPA,*
    817 F.3d 198 (5th Cir. 2016).............................................................................................9

*Helgeland v. Wis. Muns.,*
    307 Wis.2d 1, 745 N.W.2d 1 (2008)...................................................................................9

*Int'l Franchise Ass'n v. City of Seattle,*
    Case No. C14-848-RAJ, 2014 WL 12515261 (W.D. Wash. Sept. 15, 2014).....................10

*Keith v. Daley,*
    764 F.2d 1265 (7th Cir. 1985)...........................................................................................6

*LaPorte Cnty., State of Ind.,*
    754 F.2d 855 (7th Cir. 1985).............................................................................................6

*Lelsz v. Kavanagh,*
    710 F.2d 1040 (5th Cir. 1983)...........................................................................................6

*Leshore v. ByteDance Tech. Co.,*
    No. 19 CV 7915, 2021 WL 1172767 (N.D. Ill. Mar. 29, 2021) .........................................12

*Ligas ex rel. Foster v. Maram,*
    478 F.3d 771 (7th Cir. 2007)......................................................................................*passim*

*Miller v. Fed'n of S. Coops./Land Assistance Fund,*
    No. 21-11271 (5th Cir. March 24, 2022) ...........................................................................9

*NAACP v. New York,*
    413 U.S. 345 (1973).........................................................................................................12

*Northland Fam. Plan. Clinic, Inc. v. Cox,*
    487 F.3d 323 (6th Cir. 2007).............................................................................................6

*OsteoMed LLC v. Stryker Corp.*,
No. 20-CV-6821, 2021 WL 1962393 (N.D. Ill. May 17, 2021) ...........................................................12

*Planned Parenthood of Wis., Inc. v. Kaul*,
384 F. Supp. 3d 982 (W.D. Wis.) .................................................................................................9

*Planned Parenthood of Wis., Inc. v. Kaul*,
942 F.3d 793 (7th Cir. 2019) ................................................................................................4, 8, 9, 12

*Select Retrieval, LLC v. ABT Elecs.*,
No. 11 C 03752, 2013 WL 6576861 (N.D. Ill. Dec. 13, 2013) ...........................................4

*Shea v. Angulo*,
19 F.3d 343 (7th Cir. 1994) ...........................................................................................................7

*Sokaogon Chippewa Cmty. v. Babbitt*,
214 F.3d 941 (7th Cir. 2000) .......................................................................................................12

*Stuart v. Huff*,
706 F.3d 345 (4th Cir. 2013) ......................................................................................................10

*Wis. Educ. Ass'n Council v. Walker, ("WEAC")*,
705 F.3d 640 (7th Cir. 2013) .................................................................................................*passim*

**Statutes**

American Rescue Plan Act (ARPA), Pub. L. No. 117-2, 135 Stat. 4 (2021) .........................................1, 2

**Rules**

Fed. R. Civ. P. 24 ..........................................................................................................................*passim*

**Other Authorities**

167 Cong. Rec. H762 (daily ed. Feb. 26, 2021),
https://perma.cc/X3TK-44BW .................................................................................................2

167 Cong. Rec. S1219 (daily ed. March 5, 2021),
https://perma.cc/7U6Z-6S7B ..................................................................................................2

H.R. Rep. No. 117-7 (2021),
https://perma.cc/CH87-MWNL ...............................................................................................2

## INTRODUCTION

Section 1005 offers one-time relief targeted to groups, including Black and American Indian farmers, suffering the still-lingering effects of the well-documented historical discrimination in the U.S. Department of Agriculture's farm loan programs. Plaintiffs in this action challenge the statute's constitutionality, and Defendants have consistently defended the law, in this litigation, in other litigation, and in the public sphere. Two associations now move to intervene as defendants, contending that, while they share the same ultimate objective as the government in upholding the constitutionality of § 1005, they conditionally support a different remedy should that objective not be attained. Intervention is improper for three independent reasons: First, the putative intervenors share the same ultimate objective as the government; second, the government adequately represents the associations' and their members' cognizable interests; and third, the associations lack a legally protectable interest in the sole issue that they propose to advance in the litigation.  Notably, the Movants are not seeking to intervene to protect their members' entitlement to debt relief; they seek to intervene to argue that, if § 1005 is held unconstitutional, then no one—including their own members—may receive relief under that statute.  That is not a legally protectable interest under Rule 24.  Moreover, their intervention is unnecessary because they may raise that issue, which involves a purely legal question, by filing an amicus brief. The associations' motion to intervene should therefore be denied.

## BACKGROUND[1]

In early 2021 Congress enacted the $1.9 trillion American Rescue Plan Act (ARPA), to provide a wide range of economic and other relief for a country reeling from an ongoing global pandemic. Pub. L. No. 117-2, 135 Stat. 4 (2021). Among the provisions of that law, § 1005 provides for targeted

---

[1] A more comprehensive background is set out in Defendants' brief in support of their motion for summary judgment, ECF No. 51 at 1-5.

1

debt relief for minority farmers, who Congress determined were uniquely vulnerable to fiscal calamity because of a long history of intentional discrimination in the U.S. Department of Agriculture's (USDA) farm loan programs. *Id.* § 1005.[2]

Numerous lawsuits in jurisdictions around the country challenge § 1005 on equal protection grounds.[3] The government has consistently defended the constitutionality of § 1005, and continues to do so in this and other cases.[4]

Plaintiffs in this case are two non-minority farmers who would be eligible for § 1005 debt relief but-for their non-minority status. They challenge § 1005 on equal protection grounds, alleging that it unlawfully discriminates against them on the basis of their race or ethnicity. *See* Am. Compl., ECF No. 29. The parties have completed briefing on cross-motions for summary judgment. *See* ECF Nos. 47, 51, 52, 57, 62. In its summary judgment briefing, the government vigorously defended the constitutionality of § 1005. *See, e.g.*, Defs.' Mot. for Summ. J. at 5-37, ECF No. 51; Defs.' Reply at 1-18, ECF No. 62. The government also addressed, however, what remedy the Court should enter should it conclude that § 1005 is unconstitutional. *See* Defs.' Mot. for Summ. J. at 37-40; Defs.' Reply at 18-20.

The National Association of Black Farmers (NABF) and the Association of American Indian Farmers (AAIF) (collectively, Movants) now seek to intervene. Movants share the government's ultimate objective: to "defend § 1005 of the American Rescue Plan Act" by defeating the Plaintiffs'

---

[2] *See also* H.R. Rep. No. 117-7, at 2, 12 (2021), https://perma.cc/CH87-MWNL; 167 Cong. Rec. H762, H765-66 (daily ed. Feb. 26, 2021), https://perma.cc/X3TK-44BW; 167 Cong. Rec. S1219, S1262-67 (daily ed. March 5, 2021), https://perma.cc/7U6Z-6S7B.

[3] *See Miller v. Vilsack*, 4:21-cv-595 (N.D. Tex.) *Faust v. Vilsack*, 1:21-cv-548 (E.D. Wis.); *Wynn v. Vilsack*, 3:21-cv-00514 (M.D. Fla.); *Carpenter v. Vilsack*, 21-cv-103-F (D. Wyo.); *Holman v. Vilsack*, 1:21-cv-1085 (W.D. Tenn.); *Kent v. Vilsack*, 3:21-cv-540 (S.D. Ill.); *McKinney v. Vilsack*, 2:21-cv-212 (E.D. Tex.); *Joyner v. Vilsack*, 1:21-cv-1089 (W.D. Tenn.); *Dunlap v. Vilsack*, 2:21-cv-942 (D. Or.); *Rogers v. Vilsack*, 1:21-cv-1779 (D. Colo.); *Tiegs v. Vilsack*, 3:21-cv-147 (D.N.D.); *Nuest v. Vilsack*, 21-cv-1572 (D. Minn.).

[4] Except for this case and the *Miller* class action, none of these cases are actively proceeding at present.

lawsuit. Mot. to Interv. at 1, ECF No. 56; Movants' Amicus Br. at 3, 5-19, ECF No. 53-1. But Movants disagree with the appropriate remedy should the Plaintiffs succeed in their equal protection claim. *See generally* Mot. to Interv. at 5-9. The government opposes intervention.

## ARGUMENT

Rule 24 provides two mechanisms for intervention, intervention of right and permissive intervention. Movants seek to intervene under both, contending that, should the Court find § 1005 unconstitutional, it should enjoin the statute in all contexts rather than, as the government has argued, extend its benefits to include plaintiffs. *Compare* Mot. to Interv. at 5-9, *with* Defs.' Mot. for Summ. J. at 37-40.

But Movants cannot satisfy the applicable standards for intervention of right, and permissive intervention is unwarranted. Movants do not satisfy two related requirements of Rule 24(a)(2), for intervention of right: that they "claim an interest" that the government does not already "adequately represent." And as to permissive intervention, the Court should deny the motion because Movants would lack standing to advance the sole legal argument that they wish to present—the appropriate remedy should § 1005 be held unconstitutional.  Further, on that purely legal issue—the only context where the government's view and Movants' view diverge—Movants may rely on their already-filed amicus brief. The Court should deny intervention.

## I.     Movants have not shown that they are entitled to intervene as of right.

A movant is entitled to intervene "of right" only if he establishes each of the four elements of Rule 24(a)(2): "(1) the motion to intervene is timely filed; (2) the proposed intervenors possess an interest related to the subject matter of the action; (3) disposition of the action threatens to impair that interest; and (4) the named parties inadequately represent that interest." *Wis. Educ. Ass'n Council v. Walker* ("*WEAC*"), 705 F.3d 640, 657–58 (7th Cir. 2013) (citing *Ligas ex rel. Foster v. Maram*, 478

F.3d 771, 773 (7th Cir. 2007)).[5] "The proposed intervenor has the burden of establishing all four elements; the lack of even one requires that the court deny the motion." *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 797 (7th Cir. 2019). Movants cannot intervene of right in this litigation because the government adequately represents Movants' only protectable interest.

*A. Movants' only cognizable interest in this litigation is preservation of § 1005 relief for its members.*

Under Rule 24, a proposed intervenor must show that it has "a direct, significant[,] and legally protectable interest in the question at issue in the lawsuit." *Select Retrieval, LLC v. ABT Elecs.*, No. 11 C 03752, 2013 WL 6576861, at *2 (N.D. Ill. Dec. 13, 2013) (quoting *WEAC*, 705 F.3d at 658). The movant must also show that the litigation might "impair or impede" that interest. Fed. R. Civ. P. 24(a)(2).

Defendants do not dispute that Movants' members have an interest in this litigation—the preservation of § 1005's debt relief. Movants assert that they are "working to secure financial solvency of Black and Native American farmers and ranchers, including through obtaining loan forgiveness like that provided under § 1005," and "their members have loans that would be forgiven under § 1005 as written." Mot. to Interv. at 4; *see also* Conditional Motion to Intervene, at 7, ECF No. 31 (describing members as "the intended beneficiaries of the law that Plaintiffs seek to enjoin").

Neither do Defendants dispute that this interest may be "impaired" by an adverse disposition of this action—that is, a disposition that prevents Movants' members from "obtaining loan forgiveness" that is "provided under § 1005," Mot. to Interv. at 4. *See* Fed. R. Civ. P. 24(a)(2); *Ligas*, 478 F.3d at 774. As Movants explained in their Conditional Motion to Intervene, an "adverse resolution of this action would prevent NBFA and AAIF members from receiving the financial

---

[5] A movant may also intervene under Rule 24(a) if he has "an unconditional right to intervene by a federal statute," Fed. R. Civ. P. 24(a)(1), or under Rule 24(b) if he has "a conditional right to intervene by federal statute," Fed. R. Civ. P. 24(b)(1)(A). Movants have not invoked a federal statute as the basis for intervention.

benefits conferred by" § 1005. Conditional Motion at 8; *see also id.* at 4 ("[T]his suit has the potential to . . . leave [Movants'] members in debt from which Congress intended them to be freed[.]"); *id.* at 7 ("NBFA and AAIF would be severely prejudiced if denied the opportunity to intervene because the litigation seeks to . . . remove financial benefits to their members."). Acting on behalf of their members, Movants have a sufficiently significant and protectable interest under Rule 24 that may be impaired by the disposition of this litigation. But, as explained below, the government is "adequately represent[ing] *that* interest," Fed. R. Civ. P. 24(a)(2) (emphasis added), by vigorously defending the statute and by advocating for a remedy that protects that interest even if the statute is held unconstitutional.

Moreover, and of particular significance here, that is not the interest that the Movants are proposing to advance by intervening in this litigation. Quite the contrary—the Movants wish to advance an argument that, if accepted, would *preclude* debt relief for their members. Movants argue that, *if* § 1005 is held unconstitutional, then no one—including their own members—should receive any debt relief under that statute. But Movants do not have a legally protectable interest under Rule 24 to intervene on that basis, because that result would be directly contradictory to their members' financial interest. And, as explained in the next section, any interest that Movants assert apart from their members' financial interest is not legally protectable under Rule 24.

B. *Movants' asserted interest in preserving their lobbying success is not "legally protectable" under Rule 24.*

Although Movants have asserted a "direct, significant[,] and legally protectable" interest, *WEAC*, 705 F.3d at 658, in ensuring that their members receive § 1005 benefits, *see* Conditional Mot. at 3-4, 7-8, the argument that Movants make in support of intervention does not actually advance that interest. Instead, they argue that they should be permitted to intervene in order to argue that the Court should nullify the statute rather than extend benefits if the Court finds § 1005 unconstitutional. This argument seems to rest on a different interest: preservation of the fruits of Movants' lobbying efforts

to secure benefits for, and only for, minority farmers. In their conditional Motion, Movants explain that they, and their founders, have "specifically advocated on the Act's debt forgiveness provisions, directly engaging with federal legislators to express the organization's support for the legislation and building support for the legislation by networking with other groups." Conditional Mot. at 4 (citing Decl. of Kara Boyd ¶ 7); *see also id.* (citing Decl. of John Boyd ¶ 5). This litigation, Movants explain, "has the potential to undo [their] dogged advocacy." *Id.*

An interest in preserving the successes of one's lobbying is insufficient to support intervention. *See Keith v. Daley*, 764 F.2d 1265, 1269 (7th Cir. 1985) ("IPC's interest as chief lobbyist in the Illinois legislature in favor of HB 1399 is not a direct and substantial interest sufficient to support intervention in the instant lawsuit."); *see also United States v. 36.96 Acres of Land, More or Less, Situated in LaPorte Cnty., State of Ind.*, 754 F.2d 855, 859 (7th Cir. 1985) (similarly holding that advocacy group's "intense concern" for the subject of the litigation did not warrant intervention). This rule applies with particular force when, as here, the advocacy organization does not seek to intervene to address the procedures for adopting the favored law, but to defend the law after it has already been enacted. *See Northland Fam. Plan. Clinic, Inc. v. Cox*, 487 F.3d 323, 345-46 (6th Cir. 2007) ("After the Act's passage, however, STTOP's interest in the enforcement of the statute is greatly diminished due to the state's responsibilities in enforcing and defending it as it is written. As things now stand, STTOP's interest in this case simply pertains to the enforceability of the statute in general, which we do not believe to be cognizable as a substantial legal interest sufficient to require intervention as of right."). Ideological and policy interests, such as those advanced by Movants, are not "direct, significant, or legally protectable interests" within the meaning of Rule 24. *See, e.g.*, *Lelsz v. Kavanagh*, 710 F.2d 1040, 1046 (5th Cir. 1983) ("[W]here a would-be intervenor is not asserting a legal right of his own, but is advocating the pursuit of a particular policy, his interest will be deemed to be adequately represented

by existing parties."). The proper way to advance such an interest is in an amicus brief, as Movants have already done. *See* Movants' Amicus Br. at 3, 5-19.

Thus, this interest cannot be a basis for intervention as of right. Rule 24(a)(2), by its terms, requires that the movant "claim[] an interest" in the litigation and also that the existing parties not "adequately represent *that* interest." Fed. R. Civ. P. 24(a)(2) (emphasis added). Because Movants' ideological interest in a certain outcome is not the type of interest protected by Rule 24, it makes no difference whether the government is adequately representing *that* distinct interest.[6] The only relevant question is whether the government is adequately representing Movants' sole legally cognizable interest in securing the financial benefits of § 1005 relief. And as to that interest, Movants do not even argue that the government's representation is inadequate.

     *C. The government adequately represents Movants' sole protectable interest in this litigation.*

Movants are not entitled to intervene as of right, because their sole protectable interest—in obtaining for their members the benefits conferred by § 1005—is "adequately represent[ed]" by the government, Fed. R. Civ. P. 24(a)(2). Movants do not dispute that the government shares their ultimate objective of defeating Plaintiffs' lawsuit and implementing § 1005 as enacted. Movants thus fail to rebut two presumptions of adequate representation. Representation is presumed adequate and—absent rebuttal—intervention of right is unavailable, either when the parties share the same ultimate goal or when the government is a party. Here, both presumptions apply, and Movants rebut neither.

  "[W]hen the prospective intervenor and the named party have the same goal, a 'presumption [exists] that the representation in the suit is adequate.'" *WEAC*, 705 F.3d at 659 (quoting *Shea v.*

---

[6] Moreover, Movants' interest in a particular remedy should the Court find that § 1005 violates Plaintiffs' equal protection rights is already advanced by Plaintiffs, the other "existing parties," Fed. R. Civ. P. 24(a)(2), who advocate for the same remedy as Movants do. *See* Pls.' Mot. for Summ. J. at 25-27, ECF No. 47.

*Angulo*, 19 F.3d 343, 347 (7th Cir. 1994)). Here, Movants and the government "share the same goal": to uphold § 1005 against constitutional attack so that farmers like Movants' members may benefit from its terms. *Compare, e.g.*, Mot. to Interv. at 1; Movants' Amicus Br. at 3, 5-19 (arguing that § 1005 survives strict scrutiny and that Plaintiffs' motion for summary judgment should be denied), *with* Defs.' Opp'n to Pls.' Mot. for Summ. J. at 5-37, ECF No. 52 (arguing that § 1005 survives strict scrutiny and that Plaintiffs' motion for summary judgment should be denied). When both the proposed intervenor and an existing party seek the same end result, intervention is presumptively unavailable. Movants have identified no "conflict," *WEAC*, 705 F.3d at 659, such as "collusion" between the parties, *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Old Sec. Life Ins. Co.*, 600 F.2d 671, 680 (7th Cir. 1979), that would call into doubt the government's pursuit of its and the Movants' shared goal.

Moreover, in this case Plaintiffs must also overcome the "even stronger" presumption against intervention that applies when the government is a party. In such cases, representation is presumed adequate "unless there is a showing of gross negligence or bad faith." *Planned Parenthood*, 942 F.3d at 799 (quoting *Ligas*, 478 F.3d at 774). Movants do not even attempt to make this showing. Nor could they: the government has consistently and forcefully defended the constitutionality of § 1005, in this and many other district courts. And as to that defense, Movants have no quarrel—they do not identify any basis on which even to argue that the government has engaged in "gross negligence" or "bad faith."

Movants do not dispute that the presumption that the government will adequately represent their asserted interest applies. *See* Conditional Mot. at 8, Mot. to Interv. at 3, 5. With good reason. Like the official defendants in *Ligas,* the Secretary of Agriculture is "responsible for administering" the law at issue. 478 F.3d at 775 (government presumption applied when state defendants administered law that benefited proposed intervenors). And the Department of Justice has been forcefully defending the validity of Section 1005 in this and other litigation. Thus, the presumption of adequate

representation by the government applies here. 942 F.3d at 799 (citing *Helgeland v. Wis. Muns.*, 307 Wis.2d 1, 745 N.W.2d 1, 24 (2008)).[7]

But Movants entirely fail to identify, much less engage with, the "bad faith or gross negligence" standard that they then must meet to overcome the presumption of the government's adequate representation.[8] To overcome the presumption, Movants must make "a concrete showing" of the government's "bad faith or gross negligence before" the Court can permit intervention. *Planned Parenthood*, 942 F.3d at 801.

The only objection that Movants have to the government's approach to this litigation is the government's conditional argument that, should the Court find § 1005 unconstitutional, the Court should redress that injury by extending § 1005's benefits to Plaintiffs without regard to their race or ethnicity. *See* Mot. to Interv. at 5; *see generally* Defs.' Opp'n to Pls.' Mot. for Summ. J. at 37-40. But advancing this argument does not even approach either bad faith or gross negligence. It is a remedy

---

[7] A Fifth Circuit panel recently concluded in an unpublished decision that, under Fifth Circuit law, the government presumption did not apply to the government's defense of § 1005. *See Miller v. Fed'n of S. Coops./Land Assistance Fund*, slip op. at 6 n.4, No. 21-11271 (5th Cir. March 22, 2022). In the Fifth Circuit, the presumption does not apply if the government defendant is not defending a "sovereign interest." *See Entergy Gulf States La., LLC v. EPA*, 817 F.3d 198, 203 n.2 (5th Cir. 2016). The Fifth Circuit reasoned that the issuance and repayment of loans addressed by § 1005 was not a sovereign interest. *Miller*, slip op. at 6 n.4. The government disagrees with the Fifth Circuit's conclusion, as what is at issue in this litigation and the *Miller* litigation is the constitutional validity of an Act of Congress— the ability to make and enforce laws is the quintessential sovereign interest. But in any event, the Fifth Circuit's "sovereign interest" requirement does not apply in the Seventh Circuit. Moreover, unlike the associations that were allowed to intervene in *Miller*, Movants here have not argued that the government's defense of the constitutionality of § 1005 is inadequate, nor do they propose to raise arguments in the defense of its constitutionality that the government is not advancing. Rather, Movants' divergence from the government relates solely to the question of remedy should § 1005 be held invalid. That issue does not require the submission of any new evidence; it relates solely to a legal issue to be resolved on the parties' briefs.

[8] If Movants' failure to discuss the appropriate standard foreshadows an intent to dispute it, such a dispute must fail. "The Seventh Circuit has repeatedly required a showing of bad faith or gross negligence to rebut the presumption of adequacy of representation when the party is charged with defending against a constitutional challenge." *Planned Parenthood of Wis., Inc. v. Kaul*, 384 F. Supp. 3d 982, 988 n.5 (W.D. Wis.), *aff'd*, 942 F.3d 793 (7th Cir. 2019); *see also id.* (rejecting argument to the contrary as "silly").

plainly available under Supreme Court precedent and, in the government's view, the "proper" remedy that the Court should enter if Plaintiffs establish that § 1005 violates their rights. *Califano v. Westcott*, 443 U.S. 76, 89 (1979). The government advances the argument only conditionally, while still forcefully advocating for the law's constitutionality. *See* Defs.' Opp'n to Pls.' Mot. for Summ. J. at 5-37. Moreover, the government is advancing the argument to *preserve* the benefits of Section 1005 for Movants' members—not to destroy them, which would be the result if Movants' argument were accepted.

Plaintiffs' citation to two out-of-circuit district court cases, Mot. to Interv. at 5-6, is unhelpful to their cause. Neither the Fourth nor the Ninth Circuit uses the Seventh Circuit's "bad faith or gross negligence" standard. *See Stuart v. Huff*, 706 F.3d 345, 351 (4th Cir. 2013) (requiring "very strong showing"); *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003), *as amended* (May 13, 2003) (requiring "very compelling showing"). Because Movants "have made no effort to show gross negligence or bad faith on the part of the [government] defendants," they "have therefore not overcome the presumption that the defendants, as governmental bodies charged with protecting the interests of the proposed intervenors, will provide adequate representation." *Ligas*, 478 F.3d at 775.

Moreover, in each of the cases Movants cite, the remedy at issue would have directly and concretely burdened the movant. *See Am. Acad. of Pediatrics v. FDA*, PWG-18-883, 2019 WL 5964548 (D. Md. Oct. 2, 2019) (remedy imposed "accelerated deadline" for regulations on movant's business); *Int'l Franchise Ass'n v. City of Seattle*, Case No. C14-848-RAJ, 2014 WL 12515261 (W.D. Wash. Sept. 15, 2014) (contemplated remedy would result in lower wages for movants). Unlike in those cases, the remedy the government proposes here would benefit Movants' members. The government's principal argument—that § 1005 is constitutional—and its conditional argument—that if it is not, extension of the benefits is the proper remedy—both advance the Movants' asserted interest in ensuring that "resolution of this action [does not] prevent NBFA and AAIF members from receiving the financial

benefits conferred by" § 1005, Conditional Motion at 8, or "leave [Movants'] members in debt from which Congress intended them to be freed[.]"), *id.* at 4. Thus, even in its conditional argument the government shares the same ultimate goal as Movants: to ensure their members "receiv[e] the financial benefits conferred by" § 1005. Conditional Mot. at 8. Even if in some cases a divergence in views on the proper remedy would be sufficient on its own—and in the Seventh Circuit it is not—it is insufficient here where the proposed remedy would not burden Movants.

The government has adequately represented the Movants' interest throughout this litigation, and continues to do so. The government is vigorously defending the constitutionality of the statute and seeks to preserve those benefits for the Movants' members—even should the Court find the statute is unconstitutional. Movants make no quibble with the government's ongoing defense of the litigation, and identify no way in which the government's defense of § 1005 is inadequate or conflicts with Movants' asserted interest in ensuring that their members "receiv[e] the financial benefits conferred by the laws challenged in this case." Conditional Mot. at 8.

\*        \*        \*

The issue for which Movants contend there is a conflict between them and the government is unrelated to the only interest that could legally support Movants' intervention, preservation of the benefits of § 1005. As to "that interest," Rule 24(a)(2), the government is already adequately representing it. Movants have made no effort to meet their burden to show bad faith or gross negligence in the government's representation. Regardless, the government is in fact forcefully defending the statute and the benefits it provides to minority farmers. Intervention of right is therefore unavailable.

## II.    The Court should deny permissive intervention.

Alternatively, a court may authorize "permissive intervention" under Rule 24(b)(1)(B) if "the applicant's claim and the main action share common issues of law or fact and . . . there is independent

jurisdiction." *Ligas*, 478 F.3d at 775. Even if the party seeking to intervene meets the requirements for permissive intervention, the Court has discretion to deny it. *See id.* ("[P]ermissive intervention is within the discretion of the district court . . . ."); *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000) ("Permissive intervention under Rule 24(b) is wholly discretionary . . . .").

Permissive intervention is largely committed to the sound discretion of the district court. *NAACP v. New York*, 413 U.S. 345, 366 (1973). The elements of intervention of right are appropriate factors to consider when deciding a motion for permissive intervention. *Planned Parenthood*, 942 F.3d at 804. Among the additional factors that a court might consider is whether intervention would "add value" to the litigation, *OsteoMed LLC v. Stryker Corp.*, No. 20-CV-6821, 2021 WL 1962393, at *3 (N.D. Ill. May 17, 2021), or whether the movant "can pursue fully his objections" by other means, *T.K. through Leshore v. ByteDance Tech. Co.*, No. 19 CV 7915, 2021 WL 1172767, at *7 (N.D. Ill. Mar. 29, 2021).

Here, Movants' participation as a party would add little value, and should be denied. For one, Movants' legally protectable interests are adequately represented by the government.[9] The only point on which Movants diverge from the government is the question of remedy, and on that point Movants make a purely legal argument that is adequately explained in their amicus brief. *See* Amicus Br. at 20; Mot. to Interv. at 5-9. There is no need for any factual development of the record on that issue; the question can be resolved by the Court solely by reference to legal principles and the briefs, including any amicus briefs.  Moreover, Movants expressly disavow any intention to make any additional filings beyond their amicus brief and motion to intervene. Mot. to Interv. at 10. Their participation in this matter *as a party* will not add value to the litigation in *this* Court.

---

[9] And, as noted above, Plaintiffs already argue for the same remedy that Movants do. *See* Pls.' Mot. for Summ. J. at 25-27.

In recognition of this, Movants clarify that they seek to intervene solely so that they might appeal a judgment that finds § 1005 unconstitutional, but expands its benefits. But this cannot be a valid basis for intervention, because in that scenario Movants would lack standing to appeal.

Movants' standing is based on the § 1005 benefits that their members stand to gain from the challenged statute. *See* Conditional Mot. at 5 ("NBFA and AAIF's members have standing because they stand to receive financial benefits from the law that this action seeks to enjoin."). Should the Court uphold the statute (as the government argues and the Movants desire), the members will receive § 1005's benefits and they will have no injury. Should the Court find the statute unconstitutional but, as relief, extend its benefits to Plaintiffs (as the government prefers and Movants oppose), Movants' members still will receive the benefits and thus still will have no injury. And should the Court find the statute unconstitutional but, as relief, enjoin its operation in all circumstances (as Movants prefer and the government opposes), Movants will have obtained their desired remedy.[10] But in none of these instances will Movants have cause—or standing—to appeal.

Because Movants' protectable interests are already adequately represented, and their additional interests are sufficiently presented through their participation as an amicus (to which the government consented), intervention in the district court proceedings is unhelpful and unwarranted. And because Movants would lack standing to appeal—because their members would have no injury—in the only scenario where their interests diverge from the government's, intervention is inappropriate.

## CONCLUSION

The Court should deny the motion to intervene.

---

[10] To be sure, Movants' members would be injured, in the Article III sense, by an order that enjoined § 1005 in its entirety. But in that scenario—as in any scenario where the Court finds § 1005 unconstitutional—the government, too, would have lost, making Movants' intervention unnecessary.

Dated: April 5, 2022                                 Respectfully submitted,

                                                     BRIAN M. BOYNTON
                                                     Principal Deputy Assistant Attorney General

                                                     LESLEY FARBY
                                                     Assistant Branch Director

                                                     /s/ Michael F. Knapp
                                                     KYLA M. SNOW (Ohio Bar No. 96662)
                                                     MICHAEL F. KNAPP (Cal. Bar No. 314104)
                                                     ALEXANDER V. SVERDLOV
                                                     Trial Attorneys
                                                     Federal Programs Branch
                                                     U.S. Department of Justice, Civil Division
                                                     1100 L Street, NW
                                                     Washington, DC 20530
                                                     Telephone: (202) 514-3259
                                                     Fax: (202) 616-8470
                                                     Email: kyla.snow@usdoj.gov

                                                     *Counsel for Defendants*

14

**CERTIFICATE OF SERVICE**

I hereby certify that on April 5, 2022, I electronically filed the foregoing brief using the Court's CM/ECF system, causing a notice of filing to be served upon all counsel of record.

Dated: April 5, 2022                          */s/ Michael F. Knapp*
                                              Michael F. Knapp