IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MATTHEW MORTON and JOSHUA MORTON,<br>      *Plaintiffs*,<br><br>      v.<br><br>THOMAS J. VILSACK, in his official capacity as Secretary of Agriculture; ZACH DUCHENEAUX, in his official capacity as Administrator, Farm Service Agency,<br>      *Defendants*. | Case No. 3:21-cv-00540-NJR |

**THE NATIONAL BLACK FARMERS ASSOCIATION'S AND THE ASSOCIATION OF AMERICAN INDIAN FARMERS' REPLY IN SUPPORT OF INTERVENTION**

NBFA and AAIF ("Movants") reply to the parties' oppositions to their motion to intervene. Exceptional circumstances justify this reply under Local Rule 7.1(c) and (g). Movants seek to discuss *Miller v. Vilsack*, No. 21-11271, 2022 WL 851782 (5th Cir. Mar. 22, 2022), which granted a similar intervention in another challenge to Section 1005. *See United States v. Rollins*, No. 05-CR-30133-DRH, 2011 WL 4737078, at *1 (S.D. Ill. Oct. 5, 2011) (changes in law meet LR 7.1). Movants also seek to correct misconstrued legal arguments in both parties' oppositions. *See Eagle F. v. Phyllis Schlafly's Am. Eagles*, No. 3:16-CV-946-NJR, 2020 WL 374557, at *3 (S.D. Ill. Jan. 23, 2020) (clarifying legal inaccuracies meet LR 7.1).

## I.     Movants' Interest Justifies Intervention

Movants have shown that they have an interest not represented by either party, which justifies intervention: protecting *targeted* debt relief for their members. Indeed, neither party denies that Movants' interest in protecting debt relief for their members is a sufficient interest for intervention. Dkt. No. 63 ("Pls.' Opp.") at 3; Dkt. No. 64 ("Defs.' Opp.") at 4. Nonetheless, the government recasts Movants' interest in *targeted* debt relief—as opposed to any debt relief—as a distinct "ideological and policy" concern unworthy of party status. Defs.' Opp. at 5-6. To the contrary, the record reveals *targeted* debt relief is the "property or transaction that is the subject of the action" at issue because it is what is required to remedy Movants' members' particularized harms caused by USDA's discrimination. Fed. R. Civ. P. 24(a)(2). Extending debt relief to white farmers fundamentally changes the nature of Section 1005's "property or transaction" because it will exacerbate the inequitable impacts of USDA's discrimination, thwarting Congress' intent and further harming Movants' members. Providing $4 billion in relief to Socially Disadvantaged Farmers and Ranchers ("SDFRs") and $36 billion to white farmers, which the government claims is a policy determination that has no special impact on Movants' members, will result in an even

1

more disproportionate decline in SDFRs than a loss of debt relief entirely. *See* Defs.' MSJ Br., Dkt. No. 51, at 16, 22-3. In fact, Congress passed Section 1005, with its narrow focus on SDFRs, precisely for this reason. *Id.* at 25 ("The record makes clear that Congress's intention was to remedy the effects of clearly identified, well-documented, and repeated discriminatory actions by…USDA's loan programs, not society more broadly."). That Movants have long advocated for SDFR debt relief is not evidence that their basis for intervention is to "preserv[e] success of [their] lobbying," but that their members have a special need for and interest in levelling the playing field through targeted debt relief. Defs.' Opp. at 6. Therefore, Movants are entitled to enter as parties to protect their members' particular interest in debt relief targeted to them.

The government's reliance on *Northland Fam. Plan. Clinic, Inc. v. Cox,* 487 F.3d 323 (6th Cir. 2007), is misplaced. Defs.' Opp. at 6. The Sixth Circuit clearly differentiates intervenors in *Northland*, who were denied intervention, from "public interest groups" like Movants, "whose members are affected by the law," and states that the latter "may likely have an ongoing legal interest in its enforcement after it is enacted." *Northland*, 487 F.3d at 345-6. The government's reliance is especially baffling because the State in *Northland* was defending the statute as it was written, whereas the government here seeks to upend Section 1005's purpose by extending relief.

The government's reliance on *Lelsz v. Kavanagh* similarly fails. 710 F.2d 1040 (5th Cir. 1983). The Fifth Circuit in *Lelsz* makes clear that, for the purposes of assessing an interest warranting intervention, it is "not so comfortable with such a facile distinction of 'policy' and right" and suggests that a right "*not* to be" further harmed is sufficient under Rule 24. *Id*. at 1046 (emphasis in original). As a result, the Fifth Circuit focused on the fact that the would-be intervenor's policy interest was already being represented by the plaintiffs to deny intervention. Here, Movants are seeking to prevent an outcome that would produce additional harm to their

2

members and, unlike in *Lelsz*, the government is not representing that interest. Therefore, the facile "policy" "interest" distinction the government creates here is meritless.

II. **Movants' Interest is Inadequately Represented by the Government**

Movants' interest is in preserving targeted debt relief for their members. Given that the parties admit they seek to expand debt relief beyond SDFRs if Section 1005 is found unconstitutional, Movants have established their interest is not adequately represented. The Fifth Circuit's recent decision in the Texas challenge to Section 1005 further supports Movants' position. One week after Movants filed for intervention, the Fifth Circuit ordered the Federation of Southern Cooperatives ("the Federation"), a nonprofit representing Black farmers, be allowed to intervene. The only issue was whether the Federation's interest was adequately represented by USDA. *Miller*, 2022 WL 851782, at *2. The panel determined that the presumption of adequate representation did not apply because USDA was not charged with protecting the Federation's interest and that the Federation had met its "'minimal' burden." *Id*. at *2,*4.

Even were the Court not to adopt the Fifth Circuit's view that the presumption of adequate representation does not apply, the Seventh Circuit has held similarly regarding its strongest presumption in favor of the government. The Fifth Circuit's "sovereign interest" analysis in *Miller* is not meaningfully different from the Seventh Circuit's holding that the highest presumption of adequate representation only applies when "a governmental body [is] charged by law with protecting the interests of the proposed intervenors." *Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 799 (7th Cir. 2019). The parties misconstrue this as applying any time "the government is a party." Defs.' Opp. at 8; Pls.' Opp. at 5-6. But that is inconsistent with Seventh Circuit case law. *See*, *e.g.*, *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 747 (7th Cir. 2020) (agency charged with regulating intervenor could

3

not be said to represent them). As the Fifth Circuit's holding indicates, USDA has no statutory charge to represent the interests of SDFRs. *Compare id. with Planned Parenthood*, 942 F.3d at 799 (finding the presumption to apply where the attorney general had an explicit duty by statute to defend the intervenor's interest).

While the Seventh Circuit has recognized a secondary (lower) presumption of adequate representation, assuming the Court applies that rather than following *Miller*, Movants have overcome it because the government has already taken a concrete position on remedy that is contrary to Movants' interest. *See, e.g., Driftless*, 969 F.3d at 747, 749 (a showing of "an actual, concrete conflict with the [government's] representation" establishes insufficient representation under this second-tier presumption).

As a last-ditch effort, the government attempts to undermine the gravity of the divergence by claiming that Movants would lack standing to appeal the remedy. However, this argument is based on the same conflation of Movants' interest as above, claiming Movants' have a mere policy preference against receiving generalized debt relief. But the government argues on summary judgment that Congress' compelling interest in Section 1005 is that targeted debt relief to SDFRs is necessary to remedy USDA's historic discrimination.[1] Movants agree. The government cannot have it both ways—that Congress was justified in passing Section 1005 because targeted debt relief is necessary to remedy SDFRs' harms, and yet Movants have no standing to protect those particularized interests among their members. Indeed, Movants not only have standing to appeal,

---

[1] The government's position that Movants would lack standing to appeal simply runs counter to established law around standing. *See e.g., Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 495-502 (7th Cir. 2005) (standing is a unique threshold inquiry apart from the merits of the claim, and redressability depends on the relief requested, not what a party can prove it is entitled to on the merits); *see also, e.g., Church of Scientology of California v. United States*, 506 U.S. 9, 12-13 (1992) (determining that a case is alive so long as alternative or partial remedy is possible).

they also cannot rely on the government to do so because it has expressly sought to expand the law's benefits to all farmers—in contravention of the law's purpose. Defs.' Opp. at 14; *see Solid Waste Agency of Northern Cook Cnty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 509 (7th Cir. 1996) (government's decision not to appeal "could well be thought inadequate").

### III.  Movants' Intervention is Timely

In addition to the arguments surrounding Movants' interest and representation, Plaintiffs argue Movants' motion is untimely because they should have known the government would take its position on remedy. Pls.' Opp. at 4. Plaintiffs insist Movants should have formally intervened earlier based on the government's position in preliminary injunction proceedings in *Wynn v. Vilsack*, No. 3:21-cv-514 (M.D. Fla.). Yet the Seventh Circuit explained Movants would be "laughed out of court" for attempting to intervene based on a position the government took in a different case at the preliminary injunction stage. *United States v. City of Chicago*, 870 F.2d 1256, 1263 (7th Cir. 1989). The point of proceedings following a preliminary injunction is because positions can change based on a developed record. Movants were shocked by the government's position on remedy at summary judgment, and only with the assurance that they would truly diverge from the government did Movants properly seek to intervene. *See Am. Nat. Bank & Tr. Co. of Chicago v. City of Chicago*, 865 F.2d 144, 148 (7th Cir. 1989) (mere speculation, without concrete factual support, will not defeat the presumption of the government's adequate representation).

### CONCLUSION

For the foregoing reasons, the NBFA and AAIF respectfully request the Court allow them to intervene.

Dated: April 19, 2022                                      Respectfully submitted,

**PUBLIC JUSTICE, P.C.**

*/s/ Jessica L. Culpepper*
Jessica Culpepper* (D.C. Bar No. 988976)
Lead Counsel
David Muraskin* (D.C. Bar No. 1012451)
1620 L Street NW, Suite 630
Washington, D.C. 20036
Telephone: (202) 797-8600
Facsimile: (202) 232-7203
jculpepper@publicjustice.net
dmuraskin@publicjustice.net

* Admitted *Pro Hac Vice*

*Counsel for the National Black Farmers Association and the Association of American Indian Farmers*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed via the court's CM/ECF system on April 19, 2022, which will serve all counsel of record.

*/s/ Jessica L. Culpepper*
Jessica Culpepper

6